OSCN Found Document:TORRES v. SEABOARD FOODS, LLC

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 TORRES v. SEABOARD FOODS, LLC
2016 OK 20
Case Number: 113649
Decided: 03/01/2016
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2016 OK 20, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

YAUMARY CONCEPCION TORRES, Petitioner,
v.
SEABOARD FOODS, LLC, AMERICAN ZURICH INS. CO., and THE WORKERS' COMPENSATION COMMISSION, Respondents.

APPEAL FROM THE OKLAHOMA WORKERS' COMPENSATION COMMISSION

¶0 Petitioner (employee) filed a workers' compensation claim for a cumulative-trauma injury pursuant to the Administrative Workers' Compensation Act, Oklahoma Statutes, Title 85A, Section 2(14). The administrative law judge, T. Shane Curtin, determined employee was barred from obtaining any workers' compensation remedy because when she filed her claim she had not worked a continuous 180-day period for her employer. The administrative order was appealed to the Workers' Compensation Commission, and the Commission affirmed the order of the administrative judge. Employee appealed the Commission's order to the Supreme Court and the Court retained the appeal. We hold: 85A O.S. § 2(14) violates the Due Process Section of the Oklahoma Constitution, Art. 2 § 7, when applied to employee because the statute's overinclusive and underinclusive classifications are not rationally related to legitimate State interests of (1) preventing workers' compensation fraud and (2) decreasing employers' costs.

ORDER OF WORKERS' COMPENSATION COMMISSION REVERSED;
PROCEEDING REMANDED FOR FURTHER PROCEEDINGS 

Bob Burke, Oklahoma City, Oklahoma, for Petitioner.
Juan Maldonado, Oklahoma City, Oklahoma, for Petitioner.
Connie M. Wolfe, Connie M. Wolfe & Associates, P.L.L.C., Oklahoma City, Oklahoma, for Respondent, Seaboard Foods, L.L.C.
V. Glenn Coffee and Denise K. Davick, Oklahoma City, Oklahoma, for Amicus Curiae, State Chamber of Oklahoma.

EDMONDSON, J.

I. Introduction

¶1 Petitioner, a former employee, filed a workers' compensation claim and alleged she was injured on-the-job and needed surgery. Her former employer (employer) argued that she was barred from receiving workers' compensation because she alleged a cumulative-trauma injury and she had not worked a continuous 180-day period for that employer. The administrative law judge denied her claim because she had not worked the 180-day period. The Workers' Compensation Commission affirmed the order of the administrative judge.

¶2 Employer also argues on appeal petitioner has no right to file either a workers' compensation claim or seek a common-law remedy in a District Court. Employer asserts petitioner has no legal right or remedy to receive any type of compensation or medical care from her employer in any form. Employer argues petitioner has no right to an opportunity to prove her claim of injury before any court or any administrative agency. Employee argues her employer is making an unconstitutional application of workers' compensation statutes.

¶3 Because the employee challenged the constitutionality of 85A O.S. §§ 2(14) & 5, this Court issued an order providing the Oklahoma Attorney General, Speaker of the House of Representatives, and the President Pro Tempore an opportunity to intervene by filing entries of appearance herein and briefing issues. They did not intervene and file briefs. The amicus curiae, State Chamber, filed a brief in support of the constitutionality of the challenged statutes.

¶4 Several decades of court precedent from both the U. S. Supreme Court and the Oklahoma Supreme Court on the subject of how state and federal statutes interact with State and Federal Due Process constitutional provisions clearly show an unconstitutional application of a workers' compensation statute by employer in the matter before the Court. We hold 85A O.S. § 2(14) violates the Due Process Section of the Oklahoma Constitution, Art. 2 § 7, when applied to employee because the statute's overinclusive and underinclusive classifications are not rationally related to legitimate State interests of (1) preventing workers' compensation fraud and (2) decreasing employers' costs.

II. Workers' Compensation Statutes Raised by the Parties

¶5 Two workers' compensation statutes are used by employer in support of its argument: 85A O. S. Supp. 2013 § 2(14) & § 5. The first defines cumulative trauma based upon repetitive physical activities and adds a condition requiring an employee to have completed one hundred eighty (180) days of continuous employment.

14. "Cumulative trauma" means an injury to an employee that is caused by the combined effect of repetitive physical activities extending over a period of time in the course and scope of employment. Cumulative trauma shall not mean fatigue, soreness or general aches and pain that may have been caused, aggravated, exacerbated or accelerated by the employee's course and scope of employment. Cumulative trauma shall have resulted directly and independently of all other causes and the employee shall have completed at least one hundred eighty (180) days of continuous active employment with the employer;

85A O.S.Supp. 2013 § 2 (14).

Employer argues that two reasons exist for an employee to work 180 continuous days as a condition to receive workers' compensation. The first, "It is reasonable to conceive that a worker who has worked for a significant period of time is more likely to have sustained an injury, while a worker who works for a shorter period did not. . . [and the 180-day requirement] places reasonable qualifications on what a compensable injury is, and what it is not."[1] This argument may be reduced to the simple statement that the Legislature's role includes determining what constitutes a compensable injury.

¶6 The second argument is that preventing fraud and controlling economic concerns are legitimate State interests, and the Legislature has a role in preventing fraud and advancing economic interests by decreasing employers' costs. The brief of amicus curiae provides rankings from different states based upon costs for workers' compensation insurance premiums, but it does so using a rule-prohibited Brandeis brief method.[2] However, amicus curiae's argument supporting a legislative decrease in employers' costs as a legitimate State interest may be considered apart from the Brandeis brief facts. This is so because employer's argument concerning employers' costs is sufficiently broad to fairly include employers' costs associated with workers' compensation insurance.

¶7 Employer makes the following argument:

This limitation bears a rational relationship to a legitimate State interest. Preventing fraud is a legitimate state interest. Placing a requirement that an employee work for a period of time before qualifying for a compensable injury ensures that frivolous claims and fraudulent allegations are controlled.

Respondent's Answer Brief, at pp. 5-6.

Amicus curiae similarly argues that the 180-day period is a "durational requirement . . . necessary to define the bounds of the injury . . . [and the] exposure requirement merely serves to ferret out fraudulent claims and ensure that the injury claimed is fairly attributable to the period of employment."[3]

 

¶8 Employee recognizes that legitimate State interests include legislation to prevent fraud and advance economic interests. Employee also recognizes the Legislature's role in creating workers' compensation laws. Employee argues that § 2(14) class of employees who work less than 180 days is a statutory class that violates the Due Process section of the Oklahoma Constitution, Okla. Const. Art. 2 § 7.[4]

 

¶9 Employer also argues that employee is barred from bringing a District Court action against her former employer. Employer relies upon 85A O.S. Supp. 2013 § 5.[5] Paragraph "C" of § 5 states: "The immunity from civil liability described in subsection A of this section shall apply regardless of whether the injured employee is denied compensation or deemed ineligible to receive compensation under this act." Employer argues that although employee is not eligible to bring a workers' compensation claim because of the 180-day requirement of § 2, employee is also barred from bringing an action in a District Court.

¶10 Employee argues that when the workers' compensation statutes were originally created in several States a grand bargain was created. This bargain consisted of an injured worker relinquishing a common-law right to bring an action in a District Court against the worker's employer and the worker gained more certain statutory compensation but the compensation was less in amount. On the other hand, the employer relinquished certain common-law defenses in a District Court action and gained an economic liability that was less and fixed by statute.[6] Employee argues that statutorily barring both a workers' compensation remedy and a District Court remedy violates the grand bargain and the Oklahoma Constitution. She argues for a right to proceed against her employer by an action filed in a District Court.

¶11 This Court has a fundamental duty to ascertain and give effect to, or enforce, the Legislature's intent expressed in any statute the Legislature creates.[7] If the language of the statute is plain and unambiguous, the legislative intent is deemed to be expressed by the statutory language.[8] Rules of construction are applied to determine legislative intent when the statutory language is ambiguous.[9] We first examine § 2(14) and conclude its language is not ambiguous, and apply the meaning of § 2 prior to examining § 5.

¶12 The employee in this controversy alleges a cumulative trauma injury occurred, in fact, during less than 180 continuous days of employment. Respondent and amicus curiae do not assert that § 2 (14) is a legislative determination that a cumulative injury does not, or cannot, in fact occur during the first 180 days of a person's employment. They agree that cumulative trauma is an injury "caused by the combined effect of repetitive physical activities extending over a period of time in the course and scope of employment." The brief of amicus curiae emphasizes this language to show that cumulative injury occurs during a period of time.

¶13 Respondent and amicus curiae appear to agree that the statutory language would not prohibit an employee from filing a cumulative trauma claim on the 181st day of employment, where the claim would be based upon repetitive and cumulative trauma occurring for a period of time during the previous 180 days of employment. The language requiring 180 days of employment is thus not construed as defining the nature of an injury, but a condition required to file a claim against an employer in addition to the employee having suffered an injury. As explained by amicus curiae, "the Legislature . . . delineated a particular number of days that an individual must be employed prior to filing a claim for an injury that was sustained by 'repetitive physical activities,'" or the "legislative state purpose" of the 180-day requirement is that "an individual be employed for a certain length of time prior to subjecting the employer to a claim for a repetitive injury."

¶14 Respondent and amicus curiae also characterize the 180-day employment language in § 2(14) as one element defining "cumulative trauma." Construing the language as part of a definition for cumulative trauma versus viewing it as a condition for filing a claim does not help employer's legal position. Regardless whether the language is part of the definition of a cumulative trauma or a condition for filing a claim in addition to defining trauma based upon repetitive injury, the statute is determining as a matter of law a class of employees who are prohibited from filing a workers' compensation claim although they may have suffered, in fact, a repetitive injury arising out of the course and scope of employment.[10] The language in § 2(14) cannot be read as creating an irrebutable presumption that no cumulative trauma repetitive injury can occur, as a matter of fact, during the 180-day period.[11]

¶15 We agree with respondent that § 2 (14) does not define a cumulative trauma as an injury which has necessarily been repeated every day for 180 days. Section § 2(14) clearly imposes a duration-of-employment condition as a necessary predicate for filing a cumulative trauma workers' compensation claim.

¶16 The language of § 2(14) creates two classes of employees alleging a cumulative trauma injury. The first class are those employees who allege, in fact, they have suffered a cumulative trauma compensable injury during the first 180 days of employment and who may file a claim for compensation on or after the 181st day of continuous employment. The second class are those employees who allege, in fact, they have suffered a cumulative trauma compensable injury during the first 180 days of employment and who are barred by § 2 (14) from filing a workers' compensation claim because they have not completed 180 days of continuous employment. Employee alleges she is in this latter class of employees, and that the duration-of-employment predicate for filing a workers' compensation claim in § 2(14) is unconstitutional because she is an injured worker innocent of the evil that § 2(14) was designed to address.

III. Employee's Burden to Show Unconstitutionality

¶17 A constitutional analysis begins with the well-known judicial recognition that the Oklahoma Legislature is constitutionally vested by Article 5 § 36[12] of our Constitution with a supreme legislative power extending to all rightful subjects,[13] and the presumed constitutionality of a legislative enactment is rebutted only when either the State Constitution or federal law prohibits that enactment.[14] When this Court examines a legislative enactment it tries to construe and apply it in a manner that avoids conflict with our Constitution and give the enactment the force of law.[15] The burden to show the presence of a constitutional flaw in a statute is on the party who asserts its unconstitutionality.[16] A court's function, when the constitutionality of a statute is put at issue, is limited to a determination of the validity or invalidity of the statute[17] with respect to a party in the controversy who is aggrieved by application of the challenged statute.[18]

 

IV. Employer's Reliance on United States R. R. Retirement Bd. v. Fritz.

 

¶18 Respondent and amicus curiae argue a legislative body need not state its reason for creating legislation and a legislative right or remedy is solely within the discretion of the legislative body. They conclude these principles make employee's claims without merit. We address this argument first because if they are correct then their argument would be outcome determinative on the constitutional issues raised by the employee. However, as we explain, we conclude their argument is insufficient.

¶19 Employer relies upon the U.S. Supreme Court opinion in United States R. R. Retirement Bd. v. Fritz,[19] for the principles that (1) a legislative body does not need to state its reasons for creating a statute, and (2) when the right involved is purely a statutory benefit such as a railroad retirement benefit, a benefit within the legislative grace of Congress, as in United States R. R. Retirement Bd., the proper decision-maker for drawing the line, or creating the classification is a legislative body. Employer expands upon this latter principle and argues that the Legislature has the power to determine what type of injury "qualifies as [a] compensable injury . . . The fact that an employee working 120 days falls on one side of the line and an employee working 180 days falls on the other side is not relevant."[20]

¶20 Amicus curiae makes a similar argument explaining that the Legislature has "the authority to prescribe rights and remedies for addressing occupational injuries," and quotes Adams v. Iten Biscuit Co.,[21] for the proposition that the creation of workers' compensation statutes are within the police power of the Legislature. While this Court agrees with United States R. R. Retirement Bd., and its principles, our agreement does not lead to the conclusion of respondent and amicus curiae that the challenged statutes must necessarily be constitutional.

¶21 Addressing the first cited principle from United States R. R. Retirement Bd., we agree the Legislature is not required to explain its reasons for creating a statute or expressly state that it has a particular intent when a crafting legislation. But this Court has a fundamental duty to ascertain and give effect to, or enforce, the Legislature's intent expressed in any statute the Legislature creates.[22] In cases not involving the constitutionality of a statute, a court is required to determine legislative intent and the meaning of the statutory language and then apply that meaning to the issues in controversy.[23] While language indicating legislative intent informs and assists a court with determining what a legislature is attempting to accomplish by legislation, a court's constitutional analysis must be based upon what the legislation actually accomplishes by that which is created by the statute, and not by what a legislature states it is accomplishing. Obvious examples include, whether a payment is a "tax" or a "license fee" is not determined by the name given it by legislation,[24] a gift of public funds to a private entity for a nonpublic purpose may not be made constitutional by legislation stating that the transaction is something other than a prohibited gift,[25] and legislation collecting funds from the public as part of a tax code are State funds although legislation states they are not funds belonging to the State.[26] These examples are not novel and reflect the long-recognized principle that a court's constitutional analysis of a statute is based upon what the statute actually accomplishes and not solely by a characterization given to the statute by a legislative body.[27] Parties in a controversy advocate legal positions relating to the scope or application of legislation. A court's function requires it to examine and adjudicate that issue regardless whether the Legislature has expressly articulated its reasons for creating a statute, and when the Legislature has stated its reasons the Court must examine them in relation to any constitutional provision raised by any party in the controversy.

¶22 Addressing the second cited principle from United States R. R. Retirement Bd., and as we explain more fully herein, an argument which relies on the power of a legislative body to create or abolish statutory rights and remedies as proof that a statutory classification is rational, is an argument that not only contains a fallacy[28] or an insufficient generality,[29] but is also historically-discredited insufficient legal reasoning, including in circumstances where a legislative police power has been exercised. We address this issue within the context of the employee's due process claim.

V. Employee's Claim that the Due Process Section of the Oklahoma
Constitution is Violated by Application of 85A O.S. Supp. 2013 § 2(14) & § 5

¶23 Due process often has been explained by this Court in opinions discussing both the Fourteenth Amendment's[30] Due Process Clause and Oklahoma's Due Process Section in the Oklahoma Constitution. The Oklahoma Due Process Section[31] provides a bundle of rights and one or more of those rights may be in addition to a right provided by the Due Process Clause of the Fourteenth Amendment to the U. S. Constitution.[32] However, because (1) the Oklahoma Due Process Section is coextensive with and protects, at a minimum, those rights which are also provided by the Fourteenth Amendment,[33] and (2) we hold herein that the substantive due process minimum is violated by employer's construction and application of the challenged statutes to the petitioner; we need not address whether the Oklahoma Due Process Section has a substantive due process component broader in scope than its federal counterpart in the Fourteenth Amendment.[34]

¶24 One hundred years ago, the U. S. Supreme Court indicated that the Federal Due Process Clause "would likely bar states from abolishing entirely rights of action on behalf of employees suffering physical harm because of wrongs attributable to employers."[35] Some authors have argued that between approximately 1870 and 1920 the U. S. Supreme Court understood the Federal Due Process Clause as setting (1) a ceiling with limits for expanding a cause of action and creating additional liability for one party when a legislature attempted a naked redistribution of wealth and (2) a floor with constitutional limits on abolishing a cause of action when the legislature deprived an individual of an opportunity to vindicate a basic interest, such as a right to personal bodily integrity that traditionally has been enforceable against others who invade that right.[36]

¶25 Then the High Court had a period where it developed a rational-basis review used for challenges to legislation that was characterized as social and economic in its application and not impacting a personal fundamental right.[37] Consistent with this approach the Oklahoma Supreme Court has also stated and applied a rational-basis standard of review for due process challenges to enactments classified as "economic legislation."[38] However, while the High Court gave a more legislatively deferential constitutional review of legislation involving economic regulation, it also advanced a less deferential review of legislation which acted to restrict a person's constitutionally protected liberty interests.[39] For example, fifty years ago one author commented on the inaccuracy of a court using a rational-basis standard for economic legislation when such legislation also diminished a constitutionally protected personal right, and argued that such legislation received a judicial review that was less deferential than a legislatively deferential rational-basis review.[40]

 

¶26 One well-known principle is that a legislature's authority to create or abolish a right or benefit does not mean that the legislature has the authority to create an unconstitutional condition related to that right or benefit.[41] Other well-known and simple principles demonstrating our required analysis are: (1) a Legislature's exercise of a police power has been historically recognized[42] as subject to limits expressed by the Will of the People in provisions of the Oklahoma Constitution prohibiting unreasonable and arbitrary legislation, (2) constitutional limits on police power continue to this day,[43] and (3) these limits are applicable to any exercise of governmental legislative power (including legislative power exercised by a municipality or quasi-legislative power exercised in the form of an administrative rule).[44] The legislation in this controversy does more than merely identify what employees are covered by workers' compensation or define a statutory cause of action; and doing so in both overinclusive and underinclusive form makes the legislation unconstitutional.

 

¶27 When the Legislature exercises a police power, such exercise "is an attribute of state sovereignty . . . [and] an inherent power of the state legislature that extends to the whole system of internal regulation by which the state preserves public order, prevents offenses against the state, and insures to the people the enjoyment of rights and property reasonably consistent with like enjoyment of rights and property by others."[45] Our more modern expressions of this historically recognized constitutional limitation on police power have explained that a court must examine whether legislation is rationally related to a legitimate government interest and if the challenged legislation reasonably advances that interest.[46] This analysis requires an adjudication whether a legitimate State interest exists[47] and whether it is rationally related to the legislation.

¶28 We recently noted the nature of this review when we quoted an opinion from 1977 which in turn quoted an opinion from 1930.

It is well settled that the state, or its agents, in the exercise of its police power can extend this power only to such measures as are reasonable under all the circumstances. The means adopted must bear some real and substantial relation or be reasonably necessary for the accomplishment of a legitimate object falling within the scope of the police power, and the law or regulation must tend toward the preservation of public welfare, health, safety, or morals.

Jacobs Ranch, L.L.C. v. Smith, 2006 OK 34, ¶ 52, 148 P.3d 842, 857 quoting Suntide Inn Operating Corp. v. State, 1977 OK 204, 571 P.2d 1207, 1210, quoting Gibbons v. Missouri, K. & T. R. Co., 1930 OK 108, 285 P. 1040.

A court determines (1) if there is a legitimate government interest (a) articulated in the legislation or (b) championed by the parties or (c) expressed by a recognized public policy in support of the legislation, and (2) if that interest is reasonably advanced by the legislation. We have expressed often this two-part test in a negative form when explaining an unconstitutional exercise of the police power is an arbitrary and capricious exercise of power; i.e., the exercise of legislative power is unconstitutional when it was not reasonably devoted to a legitimate interest or end, or when the legitimate police-power interest was not regulated within reasonably necessary means for the identified State interests.[48]

¶29 In due process jurisprudence involving whether a legitimate state interest exists, a court's analysis will generally be less intrusive upon an exercise of legislative discretion when the legislation is economic in nature. For many, an unforgivable jurisprudential error of Lochner was the Court substituting its own judgment for that of a legislative body on an economic issue[49] with the Court deciding that the State's interest was not a legitimate economic interest.[50] There are, of course, some circumstances where courts examine the legitimacy of the state's interest in economic legislation,[51] but the High Court does not have a history of creating bright-line tests for defining legitimate state interests.[52] Our Court frequently has been called upon by parties to make such a determination.[53]

¶30 There is little doubt that a state legislature may alter private contractual rights of employers and employees when it properly exercises its police power in creating a particular workers' compensation law,[54] or that workers' compensation laws, by themselves, have been considered by courts as a legitimate State interest since the compensation laws were first created.[55] In our case today, we do not repeat Lochner's error of improperly rejecting an articulated economic interest of the State. We accept for the purpose of the arguments made herein, respondent's articulated State interest as legitimate in this case, i.e., the prevention of workers' compensation fraud and the decrease in an employer's costs as a result of legislative effort to prevent fraud.[56]

¶31 The Due Process Section of the Oklahoma Constitution includes an equal protection element.[57] Respondent and amicus curiae rely upon Gladstone v. Bartlesville Indep. School Dist. No. 30,[58] and argue for the Court to use an equal protection rational-basis review of § 2(14) and § 5. Many substantive due process violations based upon impermissible underinclusive/overinclusive classifications may also support an equal protection claim.[59]

 

¶32 When a due process or equal protection challenge is made because a statute creates different classes of people with different legal rights, a legal analysis will often discuss whether the statute's classification is underinclusive (statute includes too few people in its created class) or if the classification is overinclusive (too many people are included in the statutory class). Generally, the U. S. Supreme Court has upheld an underinclusive statute regulating solely an economic matter when only a portion of the identified evil has been regulated,[60] but where the government is required to narrowly tailor its classification the concept of underinclusiveness may be used to show the lack of a compelling government interest sufficient to make the statutory classification constitutional.[61] A mere overinclusiveness or underinclusiveness in statutory classification will not necessarily show a failure to satisfy a rational-basis review.[62]

 

¶33 If a police-power statute is overinclusive and prohibits both wrongful conduct by people and innocent conduct by others, then overinclusiveness by including the innocent may be used to show the arbitrary nature of the classification created by the statute. In the 1951 case of Board or Regents v. Updegraff,[63] we explained that when the police power is used the acts of the Legislature are valid so long as they are not unreasonable, arbitrary, and capricious and do not violate any of the fundamental constitutional guaranties of the State and Federal Constitutions.[64] When this opinion was reversed on a different ground by the U. S. Supreme Court in Wieman v. Updegraff, the High Court applied a similar test and held due process was violated by a loyalty-oath statute that arbitrarily failed to distinguish between persons whose membership activities in certain organizations were innocent and those whose activities were based upon knowledge of the organizations' purposes.[65]

¶34 The distinction made in Wieman is noteworthy because it has been applied by courts to legislation in the nature of business regulation, and both respondent and amicus curiae argue that the legislation should be treated as economic and business related. For example, in the 1951 opinion of Adwon v. Retail Grocers Ass'n, we noted our prior opinion in 1949[66] which held the1941 Unfair Sales Act unconstitutional for the reason that it violated the state and federal constitutions by punishing for a sale for less than cost regardless of any wrongful intent by an innocent party. The Legislature subsequently deleted the unconstitutional language and the amended Act was before the Court in Adwon. A party made a claim that the Unfair Sales Act violated due process of law and relied upon opinions from Pennsylvania and New Jersey, which the Court rejected and explained that those opinions, like the former Oklahoma Act, impermissibly made no distinction in the scope of the Act between innocent conduct by individuals and those individuals committing the improper conduct the Act was designed to address by the exercise of a police power.[67]

¶35 We agree with respondent and amicus curiae that decisions concerning public policy in creating and abolishing causes of action are routinely within the judgment of the Legislature. This Court has a long history of recognizing the Legislature's general police power to alter private personal rights in contexts of creating or abolishing a cause of action. For example, in Davis Oil Co. v. Cloud,[68] while the members of the Court were not unanimous in characterizing the legal interests altered by the then recently enacted Oklahoma Surface Damages Act,[69] the Justices joining the Court's opinion and the four dissenting Justices all agreed that the Legislature has the power to change private property or rights of a person when the change is within a proper exercise of the Legislature's police powers.[70] However, the U.S. Supreme Court has recognized substantive due process limitations on state law arbitrarily increasing a person's legal liability. In the 1996 case of BMW of North America, Inc. v. Gore,[71] and the 2003 case of State Farm Mut. Auto. Ins. Co. v. Campbell,[72] the High Court held that excessive damages violated the substantive component of the Due Process Clause, i.e., this constitutional provision provided a ceiling above which damages could not be awarded. In these cases the Court recognized the legitimate state interests in awarding punitive damages, but excessive damages were held to constitute an arbitrary deprivation of property.[73]

¶36 In BMW, punitive damages were awarded to punish the defendant's business practices, and the Court used a substantive component of due process in holding that the excessive nature of the damages were not "reasonably necessary to vindicate the State's legitimate interests" in punishing the prohibited business practices.[74] Although the Court's opinions in BMW, supra, and State Farm Mut. Auto. Ins. Co., supra, have the effect of using substantive due process to establish a due process ceiling, the Court has not recently used substantive due process to state that the extinguishment of a cause of action violates a due process floor of minimum requirements. However, it is clear that a State's legitimate interests in regulating business practices are not exempt from the requirements of substantive Due Process. The Court essentially held that the imposition of arbitrarily imposed economic liability violated due process. When the Legislature decreases workers' compensation liability (and costs) for the class of employers by barring an injured employee from filing a claim, such legislation also increases potential economic liability to employees and increased economic risk allocation by a diminished duty owed to the employees. In other words, the creation of an arbitrarily designed employer immunity by shifting economic loss to an innocent injured employee would also violate State and federal Due Process.

¶37 Is prohibiting injured workers from filing a claim for cumulative trauma during the first 180 days of employment reasonably necessary (or a nonarbitrary classification) to vindicate the State's legitimate interest in preventing fraudulent workers' compensation claims?[75] In other words, is barring an injured employee from filing a cumulative trauma claim during the first 180 days of employment an arbitrary method to vindicate the State's interest in preventing fraudulent claims?

¶38 In Jimenez v. Weinberger, the U. S. Supreme Court addressed the issue of a statute created for the purpose of avoiding or stopping Social Security Act "spurious claims" by creating two classes of claimants.[76] In addition to denying one class of claimants eligibility for a benefit, the statute also "denies them any opportunity to prove dependency in order to establish their 'claim' to support and, hence, their right to eligibility."[77] In Jimenez, a statutory class of people was created for the purpose of stopping fraudulent claims and these people were denied the opportunity to show that their claims were legitimate and nonfraudulent.

¶39 Similar to Jimenez, § 2(14) creates two classes of employees with cumulative trauma injuries for the purpose of avoiding or stopping spurious (or fraudulent) workers' compensation claims, one class is entitled to compensation and another class is not. Also similar to Jimenez, § 2(14) individuals are denied the opportunity to establish their claims and their right to receive compensation for injuries arising out of the course and scope of employment, i.e., one class may file a claim and one may not.

¶40 The High Court noted prevention of spurious claims is a legitimate governmental interest.[78] The Court explained that "It does not follow, however, that the blanket and conclusive exclusion . . . [of one class to benefits] is reasonably related to the prevention of spurious claims."[79] The Court explained that assuming the class of individuals are, "in fact," within the class of people who would be entitled to benefits but for the challenged statutory classification, then the statutory classification discriminates "without any basis for the distinction since the potential for spurious claims is exactly the same as to both subclasses."[80]

 

¶41 Two years after Jimenez, the U. S. Supreme Court explained its holding by stating that if a conclusive exclusion of one class to a statutory benefit is combined with a statutory prohibition for members of this class to show they would otherwise be entitled to the statutory benefit; then the purpose of providing a statutory benefit to those entitled is lost as to those individuals. Further, an articulated purpose of preventing spurious claims was constitutionally insufficient in Jimenez because "to conclusively deny one subclass benefits presumptively available to the other denies the former the equal protection of the laws guaranteed by the due process provision of the Fifth Amendment."[81] Different United States Courts of Appeals have observed that a rational basis form of review was used in Jimenez, and that this review has been used to invalidate legislation.[82]

 

¶42 Language in Jimenez, refers to both the underinclusiveness and overinclusiveness of the challenged legislation.[83] Similar issues are present in our case today. When considering the articulated purpose of preventing workers' compensation fraud, a statute creating a class of employees who are injured, in fact, with a cumulative trauma injury during the first 180 days of employment with their then current employer, and then they are conclusively placed within a class of employees who file fraudulent claims, that statutory placement is overinclusive by lumping together the innocent with the guilty. On the other hand, if one of the purposes of workers' compensation is to provide statutory compensation for employees actually suffering an injury arising out of the course and scope of employment;[84] then the statute is underinclusive because it fails to include employees actually injured during the first 180 days of employment.

¶43 We also observe, like the U. S. Supreme Court in Jimenez, the prevention of spurious and fraudulent claims is a legitimate governmental interest. As noted by the High Court, it does not follow, however, that the blanket and conclusive exclusion of one class of injured employees to benefits is reasonably related to the prevention of spurious claims. Assuming that employees with less than 180 days of employment are, in fact, within the class of people who would be entitled for benefits but for the 180-day challenged statutory classification, then the statutory classification discriminates without any rational basis for the distinction since the potential for filing spurious claims is exactly the same for cumulative-trauma employees before and after 180 days of continuous employment.

¶44 In Weber v. Aetna Casualty & Surety Co.,[85] the Court held Louisiana's workers' compensation scheme violated the Fourteenth Amendment by distinguishing for different treatment the class of dependent unacknowledged illegitimate children and the class of dependent legitimate children, and observing "Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing."[86] Although we need not adopt this rationale of Weber as a necessary part of our a process analysis to adjudicate the present controversy,[87] we note § 2(14) which prohibits an injured worker from filing a non-fraudulent claim prior to the 180-day period does not show a rational relationship between legally allocating individual responsibility with the wrongful conduct that the State interest seeks to prevent.

¶45 Employer also makes an argument that § 2(14) and § 5 work together so that employee has no right and no remedy for her alleged injury and this combination of the two statutes is constitutional. Paragraph "C" of § 5 states: "The immunity from civil liability described in subsection A of this section shall apply regardless of whether the injured employee is denied compensation or deemed ineligible to receive compensation under this act." Respondent argues employee is prohibited from filing an action in the District Court against her employer although she has no workers' compensation remedy.

¶46 The § 5 prohibition of filing in a District Court shows that the interest of the State behind the classification scheme cannot be solely the prevention of fraudulent claims filed with the Workers' Compensation Commission.[88] Generally, the act of classifying is grouping or segregating objects and that act assumes a purpose for the classification to accomplish a particular result that is something other than a mere purpose to classify.[89] Respondent and amicus curiae state the two statutes are economic in nature. They state the purpose is a State interest in lowering costs to employers. A statute regulating economic affairs is not unconstitutional merely because an economic detriment or benefit is created by a statutory classification. The very nature of such statutes is to alter economic benefits with or without corresponding economic detriments. Again, for the purpose of our analysis we assume that lowering an employer's costs is a legitimate State interest.

¶47 But their argument repeats a similar flaw. They argue a rational basis for legislation is shown if the purpose of a statute, as articulated by a legitimate State interest, is accomplished in any degree regardless of the irrationality of the classifications created by the statute. Their first argument is that a statute with a purpose to decrease workers' compensation fraud is constitutional if workers' compensation fraud is, or potentially will be, decreased in any degree by operation of the statute. Their second argument using the legitimate State interest in lowering costs to employers becomes: A statute with a purpose to lower an employer's costs is constitutional if employer's costs are, or potentially will be, decreased in any degree by operation of the statute. Just as their first argument fails to include concepts of overinclusive and underinclusive constitutional flaws in statutes receiving a rational basis review, so does their second argument. We decline their invitation to adopt their position that class distinctions between employees with similar injuries is rationally related to a legitimate State interest although principles of underinclusiveness and overinclusiveness show irrationality in the classification.

¶48 We conclude the overinclusive and underinclusive nature of § 2(14) as it relates to the legitimate State interest to prevent workers' compensation fraud and its prohibition preventing an employee from filing a non-fraudulent workers' compensation claim violates the Due Process Section of the Oklahoma Constitution, Art. 2 § 7. Adwon v. Retail Grocers Ass'n, supra, Suntide Inn Operating Corp. v. State, supra, Jacobs Ranch, L.L.C. v. Smith, supra, Wieman v. Updegraff, supra, and Jimenez v. Weinberger, supra.[90]

 

VI. The Grand Bargain

 

¶49 Employee argues that when the workers' compensation statutes were originally created in several States a grand bargain was created. This bargain consisted of an injured worker relinquishing a common-law right to bring an action in a District Court against the worker's employer and the worker gained statutory compensation in a lessor amount. On the other hand, the employer relinquished certain common-law defenses in a District Court action and gained an economic liability that was both less in individual cases and fixed by statute. Employee cites to forty-two (42) provisions of the current workers' compensation scheme and argues that (1) workers' compensation remedies are inadequate, (2) the grand bargain is violated, and (3) the order denying her workers' compensation benefits should be reversed.

¶50 Two concepts are often raised as being important principles underlying workers' compensation law, (1) the State's interest in the economic welfare of injured workers, and (2) the grand bargain.[91] At the time the workers' compensation laws were created it was recognized that a worker's common-law remedies in District Courts for on-the-job injuries were less than ideal. For example, in writing for the Yale Law Journal in 1911, then Oklahoma Supreme Court Justice Kane explained that the compensation laws then being enacted had a goal of compensating an injured employee so that family members economically relying on the worker should not be left "to the tender mercy of charity or a charge upon the State."[92] We noted this purpose in 1935 and more recently in 2005.[93]

¶51 Public policies adopted by our Legislature one hundred years ago that were foundational for establishing workers' compensation laws, such as the historic Legislature's views on the grand bargain and economic-welfare shifting, do not control or limit the current Legislature's determination of public policy. It is a well-known principle of statutory and constitutional construction that one Legislature cannot bind another, and this Court has followed this principle for several decades.[94] Courts recognize that a legislature has the power to change the common law "to reflect a change of time and circumstances."[95] While the English common law may be a starting point for a legal analysis, statutory law may modify the common law.[96] The old hand that was at the legislative helm a hundred years ago does not control the present Legislature's view of good public policy.

¶52 This discussion of the grand bargain shows that the concept is important to the extent it is a beginning for an analysis to inform a court what may, or may not, be current and legitimate State interests (or current public policies) for the purpose of a court's statutory analysis in the context of addressing this employee's constitutional claim. We have concluded herein that § 2(14) was unconstitutionally applied to employee, and reverse the order of Workers' Compensation Commission for further administrative proceedings consistent with this opinion. Because we have determined § 2(14) creates an irrational classification and violates Okla. Const. Art. 2 § 7 when applied to employee, it is not necessary to analyze employee's claim that § 2(14) violates the grand bargain upon application of Art. 2 § 7, or if § 2 (14) is unconstitutional upon application of some other provision of our State Constitution.[97] We also need not address whether § 2 (14) violates Okla. Const. Art. 2 § 6.[98]

¶53 Employee's invocation of a constitutionally deficient grand bargain in the current Oklahoma statutes is a hypothetical question whose judicial resolution in this appeal would not, under the present record on appeal, alter her rights on remand.[99] Employee's citation to forty-two provisions of the workers' compensation statutes is not linked by legal argument to an aggrieved legal interest of employee that would be affected on remand, and showing her status as aggrieved is a record-driven necessity[100] to adjudicate her claim of constitutionally insufficient statutes[101] in the absence of non-Hohfeldian standing.[102]

VII. Conclusion

¶54 We conclude 85A O.S.Supp. 2013 § 2(14) violates the Due Process Section of the Oklahoma Constitution, Art. 2 § 7, because its overinclusive and underinclusive classifications are not rationally related to legitimate State interests of (1) preventing workers' compensation fraud and (2) decreasing employers' costs. We do not adjudicate employee's claims challenging the construction or constitutional sufficiency of other workers' compensation statutes, or her Okla. Const. Art. 2 § 6 claim, or her assertion that the workers' compensation grand bargain has been violated.

¶55 The order of the Workers' Compensation Commission is reversed and the matter is remanded for further proceedings consistent with this opinion.

¶56 REIF, C. J., COMBS, V. C. J., WATT, EDMONDSON, and GURICH, JJ., concur.

¶57 COLBERT, J., concur specially.

¶58 KAUGER, WINCHESTER, and TAYLOR, JJ., concur in result.

FOOTNOTES

[1] Respondent's Answer Brief, at p. 4.

[2] The term Brandeis brief is used to describe a brief which emphasizes statistics and commission reports more than judicial precedents, and the origin of the appellation is a brief filed by Louis D. Brandeis when he appeared as counsel in Muller v. Oregon, 208 U.S. 412, 28 S.Ct. 324, 52 L.Ed. 551 (1908). See Allison Orr Larsen, The Trouble with Amicus Facts, 100 Va. L.Rev. 1757, 1769-1770 (2014); William H. Rehnquist, The Supreme Court, 209 (1987).

In an appeal, the brief of an amicus curiae is limited to facts and issues raised by the parties that have not been "presented adequately" by the parties from the viewpoint of the amicus curiae. Okla. Sup. Ct. R. 1.12 (b)(1). This language does not allow an amicus curiae to expand the record on appeal via a Brandeis brief. The record on appeal is certified from the clerk of the lower tribunal. Chamberlin v. Chamberlin, 1986 OK 30, 720 P.2d 721, 723-724 ("This court may not consider as part of an appellate record any instrument or material which has not been incorporated into the assembled record by a certificate of the clerk of the trial court, nor may a deficient record be supplemented by material physically attached to a party's appellate brief."). An amicus curiae in an appeal may not raise new facts by an appellate brief. Similarly, in an original jurisdiction proceeding an amicus curiae may not put in issue a new fact, or file an appendix or exhibits. Id. Rule 1.12 (a)(2).

[3] Brief of amicus curiae at p. 9.

[4] Okla. Const. Art. 2 § 7: "No person shall be deprived of life, liberty, or property, without due process of law."

[5] 85A O. S. Supp. 2013 § 5:
A. The rights and remedies granted to an employee subject to the provisions of the Administrative Workers' Compensation Act shall be exclusive of all other rights and remedies of the employee, his legal representative, dependents, next of kin, or anyone else claiming rights to recovery on behalf of the employee against the employer, or any principal, officer, director, employee, stockholder, partner, or prime contractor of the employer on account of injury, illness, or death. Negligent acts of a co-employee may not be imputed to the employer. No role, capacity, or persona of any employer, principal, officer, director, employee, or stockholder other than that existing in the role of employer of the employee shall be relevant for consideration for purposes of this act, and the remedies and rights provided by this act shall be exclusive regardless of the multiple roles, capacities, or personas the employer may be deemed to have. For the purpose of extending the immunity of this section, any operator or owner of an oil or gas well or other operation for exploring for, drilling for, or producing oil or gas shall be deemed to be an intermediate or principal employer for services performed at a drill site or location with respect to injured or deceased workers whose immediate employer was hired by such operator or owner at the time of the injury or death.

B. Exclusive remedy shall not apply if:

1. An employer fails to secure the payment of compensation due to the employee as required by this act. An injured employee, or his or her legal representative in case death results from the injury, may, at his or her option, elect to claim compensation under this act or to maintain a legal action in court for damages on account of the injury or death; or
2. The injury was caused by an intentional tort committed by the employer. An intentional tort shall exist only when the employee is injured as a result of willful, deliberate, specific intent of the employer to cause such injury. Allegations or proof that the employer had knowledge that the injury was substantially certain to result from the employer's conduct shall not constitute an intentional tort. The employee shall plead facts that show it is at least as likely as it is not that the employer acted with the purpose of injuring the employee. The issue of whether an act is an intentional tort shall be a question of law.
C. The immunity from civil liability described in subsection A of this section shall apply regardless of whether the injured employee is denied compensation or deemed ineligible to receive compensation under this act.
D. If an employer has failed to secure the payment of compensation for his or her injured employee as provided for in this act, an injured employee, or his or her legal representative if death results from the injury, may maintain an action in the district court for damages on account of such injury.
E. The immunity created by the provisions of this section shall not extend to action against another employer, or its employees, on the same job as the injured or deceased worker where such other employer does not stand in the position of an intermediate or principal employer to the immediate employer of the injured or deceased worker.
F. The immunity created by the provisions of this section shall not extend to action against another employer, or its employees, on the same job as the injured or deceased worker even though such other employer may be considered as standing in the position of a special master of a loaned servant where such special master neither is the immediate employer of the injured or deceased worker nor stands in the position of an intermediate or principal employer to the immediate employer of the injured or deceased worker.
G. This section shall not be construed to abrogate the loaned servant doctrine in any respect other than that described in subsection F of this section. Nothing in this act shall be construed to relieve the employer from any other penalty provided for in this act for failure to secure the payment of compensation under this act.
H. For the purpose of extending the immunity of this section, any architect, professional engineer, or land surveyor shall be deemed an intermediate or principal employer for services performed at or on the site of a construction project, but this immunity shall not extend to the negligent preparation of design plans and specifications.
I. If the employer has failed to secure the payment of compensation as provided in this act or in the case of an intentional tort, the injured employee or his or her legal representative may maintain an action either before the Commission or in the district court, but not both.

[6] The Court has noted on more than one occasion the purpose of the workers' compensation laws to abrogate the worker's common law right of action with the substitution of an exclusive statutory remedy. See, e.g., Earnest, Inc. v. LeGrand, 1980 OK 180, 621 P.2d 1148, 1152 ("At the time of adoption of the first Workers' Compensation law in the State of Oklahoma, benefits were provided for accidental personal injury, . . . [and] This was an abrogation of the employee's common law right of action for personal injury against an employer.") (material and citations omitted); Maryland Casualty Co. v. Hankins, 1975 OK 25, 532 P.2d 426, 429 (The act abrogated the common law right of action, for injury to an employee in a hazardous occupation, and substituted a statutory, exclusive remedy.").

[7] In re T. H., 2015 OK 26, ¶ 9, 348 P.3d 1089, 1092 ("The fundamental rule of statutory construction is to ascertain and give effect to legislative intent, and that intent is first sought in the language of a statute."); Rogers v. Quiktrip Corp., 2010 OK 3, ¶ 11, 230 P.3d 853, 859 ("The fundamental rule of statutory construction is to ascertain and give effect to legislative intent."); State ex rel. Oklahoma Dept. of Health v. Robertson, 2006 OK 99, ¶ 6, 152 P.3d 875, 877-878 ("Legislative intent governs statutory interpretation and this intent is generally ascertained from a statute's plain language."); In re Abrams' Will, 1938 OK 162, 77 P.2d 101, 103 (the court has a duty to ascertain and enforce the legislative intent).

[8] Yocum v. Greenbriar Nursing Home, 2005 OK 27, ¶ 9, 130 P.3d 213, 219.

[9] Yocum v. Greenbriar Nursing Home, 2005 OK 27, ¶ 9, 130 P.3d at 219.

[10] A "compensable injury" includes "cumulative trauma . . . arising out of the course and scope of employment." 85A O.S. Supp. 2013 § 2 (9)(a).

[11] The statutory language may not be deemed to create an irrebuttable presumption that no cumulative trauma repetitive injury can actually exist, in fact, during the 180-day period. For example, there is a fundamental difference between an irrebuttable presumption of total disability that is created upon a statutorily-required actual factual showing versus an irrebuttable presumption that no actual cumulative trauma can exist in fact, regardless of facts that might be marshaled by an injured worker to challenge the presumption. In Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 22-23, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976), the Court explained an "irrebuttable presumption" did not violate due process where a presumption of total disability was simply to establish entitlement in the case of a miner who is "clinically diagnosable as extremely ill with pneumoconiosis arising out of coal mine employment." The presumption of disability was created by facts presented in the controversy. Id.

The power to adjudicate questions of fact framed by a controversy is exclusively a judicial power, or in the case of administrative proceedings, a quasi-judicial power. Conaghan v. Riverfield Country Day School, 2007 OK 60, ¶ 20, 163 P.3d 557, 564, citing Yocum v. Greenbriar Nursing Home, 2005 OK 27, ¶ 13, 130 P.3d 213, 220. See also State ex rel. Blankenship v. Freeman, 1968 OK 54, 440 P.2d 744, 757 ("Facts to which the law is to be applied in the process of adjudication are called adjudicative facts. These are facts 'about the parties'. They must be ascertained from formal proof and are to be distinguished from 'legislative facts', or those which are helpful to a court in determining the meaning, effect, content or validity of enactments.").

[12] Okla. Const. Art. 5 § 36: "The authority of the Legislature shall extend to all rightful subjects of legislation, and any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject or subjects whatsoever."

[13] Movants to Quash Multicounty Grand Jury Subpoena v. Dixon, 2008 OK 36, ¶ 22, 184 P.3d 546, 553 ("The authority of the Legislature extends to all rightful subjects of legislation not withdrawn by the Constitution or in conflict therewith."); In re Flynn's Estate, 1951 OK 310, 237 P.2d 903, 905 ("The authority of the Legislature extends to all rightful subjects of legislation not withdrawn by the Constitution or in conflict therewith.").

[14] In re Detachment of Municipal Territory from City of Ada, Okla., 2015 OK 18, ¶ 7, 352 P.3d 1196, 1199 ("This Court does not examine the Constitution to decide whether the Legislature is permitted to act, . . . only whether it is prohibited from acting."); Fair School Finance Council, Inc. v. State, 1987 OK 114, 746 P.2d 1135, 1149 ("our state Legislature generally may do, as to proper subjects of legislation, all but that which it is prohibited from doing.") Williams Natural Gas Co. v. State Bd. of Equalization, 1994 OK 150, n. 12, 891 P.2d 1219 ("Testa v. Katt, 330 U.S. 386, 393, 67 S.Ct. 810, 814, 91 L.Ed. 967 (1947), teaches that the Supremacy Clause compels a state court to exercise jurisdiction over a federal-law claim."); Nova Health Systems v. Pruitt, 2012 OK 103, ¶ 2, 292 P.3d 28 ("this Court is not free to impose its own view of the law...this Court is duty bound by the United States and the Oklahoma Constitutions to 'follow the mandate of the United States Supreme Court on matters of federal constitutional law.'"); In re Initiative Petition No. 348, State Question No. 642, 1992 OK 122, 838 P.2d 1, 3, n. 2 ("When the United States Supreme Court speaks on matters of federal constitutional law, state courts are bound under the Fourteenth Amendment to follow its mandate. Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1090 (1961).").

[15] St. Paul Fire & Marine Ins. Co. v. Getty Oil Co., 1989 OK 139, 782 P.2d 915, 918 ("Whenever an act of the legislature can be so construed and applied as to avoid conflict with the constitution, and give it the force of law, such construction will be adopted by the courts."); Fent v. Oklahoma Capitol Imp. Authority, 1999 OK 64, ¶ 3, 984 P.2d 200, 204 ("A court is bound to accept an interpretation that avoids constitutional doubt as to the legality of a legislative enactment.").

[16] CDR Systems Corp. v. Oklahoma Tax Commission, 2014 OK 31, ¶ 10, 339 P.3d 848, 852, quoting Thomas v. Henry, 2011 OK 53, ¶ 8, 260 P.3d 1251, 1254. See also In re Initiative Petition No. 397, State Question No. 767, 2014 OK 23, ¶ 39, 326 P.3d 496, 512 ("A burden to present facts, claims and legal arguments falls on the party who asserts an entitlement to the judicial relief sought.").

[17] CDR Systems Corp. v. Oklahoma Tax Commission, 2014 OK 31, at ¶ 10, 339 P.3d at 853, quoting Fent v. Okla. Capitol Improvement Auth., 1999 OK 64, ¶ 3, 984 P.2d 200, 204.

[18] Generally, a party challenging the constitutionality of a statute must have a legally cognizable interest which is threatened by application of that statute. Seal v. Corporation Commission, 1986 OK 34, 725 P.2d 728, 283, appeal dismissed sub. nom., Amerada Hess Corp. v. Corporation Commission, 479 U.S. 1073, 107 S.Ct. 1265, 94 L.Ed.2d 126 (1987) (standing to challenge constitutionality of statutes and administrative rules by Corporation Commission was shown by a causal connection between the party's direct and pecuniary injury and application of the challenged statutes and rules); Herring v. State ex rel. Oklahoma Tax Commission, 1995 OK 28, 894 P.2d 1074, 1076 (summary judgment for defendants affirmed on appeal because plaintiff did not have standing where record failed to show any injury to plaintiff caused by application of the challenged statute). Cf. Tulsa Industrial Auth. v. City of Tulsa, 2011 OK 57, n. 21, 270 P.3d 113, 121, citing Tulsa Indus. Auth. v. State, 1983 OK 99, 672 P.2d 299, 301 (listing four elements of justiciability and explaining 12 O.S. § 1651 [declaratory judgment proceeding] invests District Courts with jurisdiction in cases of actual controversy to determine the construction or validity of any statute.).

There are exceptions to this general rule. See, e.g., Gentges v. Oklahoma State Election Bd., 2014 OK 8, ¶ 7, 319 P.3d 674, 676, citing State ex rel. Howard v. Oklahoma Corporation Commission, 1980 OK 96, 614 P.2d 45, 51 (a private party may be granted standing to vindicate a public interest). The parties in the controversy before the Court do not discuss exceptions to the general rule.

[19] 449 U. S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980).

[20] Respondent's Answer Brief at p. 6.

[21] 1917 OK 47, 162 P. 938 (quoting the Court's Syllabus).

[22] In re T. H., supra, and State ex rel. Oklahoma Dept. of Health v. Robertson, supra, at note 7 supra.

[23] Multiple Injury Trust Fund v. Wade, 2008 OK 15, ¶ 23, 180 P.3d 1205, 1212 (the court applies the meaning of statutory language).

[24] Red Slipper Club, Inc. v. City of Oklahoma City, 1979 OK 118, 599 P.2d 406, 408.

[25] Veterans of Foreign Wars v. Childers, 1946 OK 211, 171 P.2d 618.

[26] State ex rel. Wright v. Oklahoma Corp. Com'n, 2007 OK 73, ¶¶ 18-28, & n. 14, 170 P.3d 1024, 1031- 1034.

[27] See, e.g., Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 508, 57 S.Ct. 868, 81 L.Ed. 1245 (1937) (". . . the particular name which a state court or legislature may give to a money payment commanded by its statute is not controlling here when its constitutionality is in question"). Cf. Van Orden v. Perry, 545 U.S. 677, 681, 691-692, 125 S.Ct. 2854, 162 L.Ed.2d 607 (2005) (Rehnquist, C.J., and joined by Scalia, Kennedy, and Thomas, JJ.) (although legislation stated a monument commemorated "people, ideals, and events that compose Texan identity," First Amendment Establishment Clause constitutionality was not based upon legislative characterization of the monument, but upon facts showing the monument was physically placed with many secular historical monuments and it had a government significance as well as a religious one).

[28] The general principle that a legislature may use a police power to create or destroy workers' compensation rights and remedies may not be successfully used to necessarily show constitutionality of a particular workers' compensation statute. The attribute of a constitutional exercise of police powers that is applied to a legislature creating workers' compensation laws in general may not be applied as a necessary attribute to a specific workers' compensation statute without such reasoning committing the fallacy of division. See State ex rel. Oklahoma Bar Ass'n v. Mothershed, 2011 OK 84, n. 91, 264 P.3d 1197, 1220.

[29] Reliance upon a generality to decide a legal issue has been long-recognized as insufficient legal analysis when application of a legal principle requires a greater degree of specificity. For example, Judge Posner, in commenting on Justice Holmes' dissent in Lochner v. New York, 198 U.S. 45, 76, 5 S.Ct. 539, 49 L.Ed 937 (1905), stated that "general propositions do not decide concrete cases," and explained that while generality is necessary to provide guidance for future disputants and many often instinctively think of particulars as instantiations of generalities; a law may be grammatically overinclusive based upon its purpose and effect in relation to a particular application, and people usually recognize in daily life that overinclusiveness should be remedied with an interpretation that rationally relates the purpose of the law to the actual circumstances of its application, e.g., a sign "forbidding animals in a restaurant" should not be interpreted to ban humans. Richard A. Posner, Reflections on Judging, 120-121 (2013).

[30] U.S. Const. Amendment 14, § 1 provides in pertinent part: "... No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[31] The Okla. Const. Article 2, § 7 provides: "No person shall be deprived of life, liberty, or property, without due process of law."

[32] See, e.g., Turner v. City of Lawton, 1986 OK 51, 733 P.2d 375, 378 (noted the exclusion of evidence acquired by an unconstitutional search or seizure was not merely a rule of procedure, but rather a fundamental right under the Oklahoma Constitution existing independent of either the Fourth or Fourteenth Amendments of the United States Constitution); PruneYard Shopping Center v. Robins, 447 U.S. 74, 81, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980) (Court explained that its construction of the U. S. Constitution did not "limit the authority of the State to exercise its police power or its sovereign right to adopt in its own Constitution individual liberties more expansive than those conferred by the Federal Constitution.").

[33] Presley v. Board of County Commissioners of Oklahoma County, 1999 OK 45, ¶ 6, 981 P.2d 309, 312 ("Due process protections encompassed within the Okla. Const. art. 2, § 7 are coextensive with those of its federal counterpart.").

[34] See, e.g., In re Initiative Petition No. 348, State Question No. 642, 1992 OK 122, 838 P.2d 1, 12, n. 29 (after noting states which had recognized individual state constitutional rights additional to those granted by the Federal Constitution, the Court noted that it was not called upon to address whether such additional rights were present in the controversy before the Court.).

[35] John C.P. Goldberg, The Constitutional Status of Tort Law: Due Process and the Right to a Law for the Redress of Wrongs, 115 Yale L.J. 524, 569-575 (2005), explaining New York Central Railroad Co. v. White, 243 U.S.188, 37 S.Ct. 247, 61 L.Ed. 667 (1917); Missouri Pacific Railway Co. v. Humes, 115 U.S. 512, 6 S.Ct. 110, 29 L.Ed. 463 (1885); Poindexter v. Greenhow,114 U.S. 270, 5 S.Ct. 903, 29 L.Ed. 185 (1885). Both Missouri Pacific Railway Co. and Poindexter predate the often-discredited Lochner v. New York, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed 937 (1905), which protected a liberty of contract using the Due Process Clause. Thomas Colby & Peter J. Smith, The Return of Lochner, 100 Cornell L. Rev. 527 (2015) ("For a very long time, it has been an article of faith among liberals and conservatives alike that Lochner v. New York was obviously and irredeemably wrong."); Richard A. Primus, Canon, Anti-Canon, and Judicial Dissent, 48 Duke L. J. 243, 245 (1998) ("The Supreme Court's positions in Lochner and Plessy [v. Ferguson, 163 U.S.52-37 (1896)] are paradigmatic examples of what is not the law."). See also Jamal Greene, The Anticanon, 125 Harv. L. Rev. 379, 418-419 discussed at note 50, infra.

[36] John C.P. Goldberg, The Constitutional Status of Tort Law: Due Process and the Right to a Law for the Redress of Wrongs, 115 Yale L.J. 524, 559-560 (2005). Another author characterizes the period of 1895 to 1936 as one where the U. S. Supreme Court "manipulated doctrines of constitutional law" against several then popular statutory reforms. Leonard W. Levy, Original Intent and the Framers' Constitution, 369 (1988). See also David E. Bernstein, Lochner Era Revisionism, Revised: Lochner and the Origins of Fundamental Rights Constitutionalism, 92 Geo. L.J. 1, 11 (2003) (arguing that there was not one Lochner era, but three, 1897-1911, 1911-1923, and 1923 to the mid-1930s.)

[37] U. S. v. Carolene Products, Co., 304 U.S. 144, 153, 58 S.Ct. 778, 82 L.Ed. 1234 (1938) ("regulatory legislation affecting ordinary commercial transactions is not to be pronounced unconstitutional unless in the light of the facts made known or generally assumed it is of such a character as to preclude the assumption that it rests upon some rational basis within the knowledge and experience of the legislators."); Goldberg, The Constitutional Status of Tort Law: Due Process and the Right to a Law for the Redress of Wrongs, 115 Yale L.J. at 578 commenting on Carolene Products. In Carolene Products, the Court noted "There may be narrower scope for operation of the presumption of constitutionality when legislation appears on its face to be within a specific prohibition of the Constitution, such as those of the first ten amendments, which are deemed equally specific when held to be embraced within the Fourteenth." 304 U.S. at 152 n.4.

[38] Gladstone v. Bartlesville Indep. School Dist. No. 30 (I-30), 2003 OK 30, n. 54, 66 P.3d 442, citing Duke Power Co. v. Carolina Environmental Study Group, 438 U.S. 59, 82-84, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978) and T.I.M. Co., Inc. v. Oklahoma Land Title Ass'n, 1984 OK 66, 698 P.2d 915, 920.

[39] St. Joseph Abbey v. Castille, 712 F.3d 215, 221 (5th Cir.) cert. den., __ U.S. __, 134 S.Ct. 423 187 L.Ed.2d 281 (2013), ("Chief Justice Stone's footnote 4 in United States v. Carolene Products, etched in the brains of several generations of law students, both described and prescribed a fundamental dichotomy of judicial review; it retreated from the aggressive review of state regulation of business in the Lochner period while proceeding in the opposite direction in matters of personal liberty.").

[40] Robert G. McCloskey, Economic Due Process and the Supreme Court: An Exhumation and Reburial, 1962 Sup.Ct.Rev. 34, 55 ("From the first the modern Court has been troubled by a recurring problem: how does the dichotomy stand up when economic matters and personal rights are involved in a single government action?").

[41] An assertion that a legislature has the power to create and abolish workers' compensation actions as well as common-law actions generally, and that such power is sufficient to decide the issues in this controversy is the type of argument condemned more than fifty years ago by the U. S. Supreme Court as a "facile generalization" that obscures the issue to be decided. See the discussion herein of Wieman v. Updegraff, 344 U.S. 183, 191, 73 S.Ct. 215, 97 L.Ed.2d 216 (1952). This type of reasoning has been criticized by the U. S. Supreme Court in other cases as well. See, e.g., Koontz v. St. Johns River Water Management Dist., ___ U.S. ___, 133 S.Ct. 2586, 2596-2597, 186 L.Ed.2d 697 (2013) (Justice Alito's opinion for the Court collecting U. S. Supreme Court cases on the issue that government's authority to deny or withhold a right or benefit generally does not mean government has the authority to create an unconstitutional condition attached to the right or benefit created, and the opinion quotes the "facile generalization" language in Wieman.).

[42] See, e.g., Daniel J. Crooks, III, Toward "Liberty": How the Marriage of Substantive Due Process and Equal Protection in Lawrence and Windsor Sets the Stage for the Inevitable Loving of Our Time, 8 Charleston L. Rev. 223, 238 (Winter 2013-2014) citing Randy E. Barnett, The Proper Scope of the Police Power, 79 Notre Dame L. Rev. 429, 484 (2004), and Thomas M. Cooley, A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union (1866) ("Following in the natural law tradition of John Locke and the vast majority of the framers of the Constitution and Bill of Rights, as well as the framers of the Fourteenth Amendment, Cooley understood the concept of 'due process of law' to entail a substantive component that existed to provide a check on the states' police powers. To Cooley, this substantive nature safeguarded individuals' natural rights from unwarranted intrusion by the state. . . . 'Just as it is proper to prohibit wrongful or rights-violating conduct, proper police power regulations specify the manner in which persons may exercise their liberties so as to prevent them from accidentally interfering with the rights of others.'").

[43] Northeast Oklahoma Elec. Co-op., Inc. v. State ex rel. Corp. Com'n, 1989 OK 18, 768 P.2d 901, 904, quoting Oklahoma Natural Gas Co. v. Choctaw Gas Co., 1951 OK 224, 236 P.2d 970, 977 (the Court stated "we agree that "'the police power must at all times be exercised with scrupulous regard for private rights guaranteed by the Constitution.'"). Cf. Battaglia v. General Motors Corp., 169 F.2d 254, 257 (2d Cir. 1948), cert. denied, 335 U.S. 887, 69 S.Ct. 236, 93 L.Ed. 425 (1948) (" . . . while Congress has the undoubted power to give, withhold, and restrict the jurisdiction of courts other than the Supreme Court, it must not so exercise that power as to deprive any person of life, liberty, or property without due process of law or to take private property without just compensation.").

[44] McConnell v. Town Clerk of Tipton, 1985 OK 61, 704 P.2d 479, 481, citing Keaton v. Oklahoma City, 1940 OK 215 102 P.2d 938 ( "Municipalities are authorized to enact zoning ordinances and when the legislative branch of the municipal government has acted in a particular case, its expressed judgment on the subject will not be overridden by the judiciary unless such judgment is unreasonable, arbitrary or constitutes an unequal exercise of police power."); Mid-Continent Life Ins. Co. v. City of Oklahoma City, 1985 OK 41, n.4, 701 P.2d 412, 413 (Court collected opinions dating from 1979, 1976, 1972, 1967, two from 1966, in support of its statement that "Unless the zoning decisions of a municipality are found not to have a substantial relation to the public health, safety, morals or general welfare or to constitute an unreasonable, arbitrary exercise of police power, its judgments will not be overridden by the district court.").

For a discussion of the quasi-legislative function of an administrative rule see Waste Connections, Inc. v. Oklahoma Dept. of Environmental Quality, 2002 OK 94, ¶ 11, 61 P.3d 219, 224. It has been long-recognized that administrative actions are subject to the Due Process provisions of the State and U. S. Constitutions. See, e.g., State v. Parham, 1966 OK 9, 412 P.2d 142, 154 ("The due process clauses of the state and federal constitutions afford protection against arbitrary and unreasonable administrative action.").

[45] Jacobs Ranch, L.L.C. v. Smith, 2006 OK 34, ¶ 24, 148 P.3d 842, 849 (emphasis added).

[46] Edmondson v. Pearce, 2004 OK 23, ¶ 35, 91 P.3d 605, 624 (courts may not annul legislation for being in violation of substantive due process unless it is clearly irrelevant to the policy the Legislature may adopt or is arbitrary, unreasonable or discriminatory."), emphasis added and quoting Jack Lincoln Shops, Inc. v. State Dry Cleaners' Board, 1943 OK 28, 135 P.2d 332, 333, appeal dismissed, 320 U.S. 208, 63 S.Ct. 1448, 87 L.Ed. 1847 (1943).

[47] See, e.g., Timothy Sandefur, In Defense of Substantive Due Process, or the Promise of Lawful Rule, 35 Harv. J. L. & Pub. Pol'y 283, 323 (2012) ("To put this in modern parlance: So long as courts must decide whether a law is rationally related to a legitimate government interest, they cannot hope to avoid determining what is and is not a legitimate government interest.").

[48] See, e.g., Federal Land Bank of Wichita v. Story, 1988 OK 52, 756 P.2d 588, 593, quoting State ex rel. Roth v. Waterfield, 1933 OK 546, 29 P.2d 24 (Court explained that "Section 493 [62 O.S.Supp.1986 § 493] operates as 'an arbitrary and capricious extension of time amounting to a taking of private property without ... compensation ... or protection of the rights of the mortgagee' [and] Therefore, Section 493 is not a reasonable exercise of the police power devoted to a legitimate end..."). Cf. Amoco Production Co. v. Corporation Commission of State of Oklahoma, 1986 OK CIV APP 16, 751 P.2d 203 (modified on certiorari and adopted as opinion of the Supreme Court) (substantive due process required reversal because an order of the Commission had an unreasonable impact).

[49] See, e.g., Ashira Pelman Ostrow, Judicial Review of Local Land Use Decisions: Lesson from RLUIPA, 31 Harv. J. L. & Pub. Pol'y 717, n. 56, 731 (2008) ("In the post-Lochner era, courts are particularly wary of substituting their judgment for that of the community's elected representatives when examining economic legislation. The Lochner era refers to a period of time in which the Court invalidated regulatory economic legislation because it disagreed with its legislative purpose."); Jamal Greene, The Anticanon, 125 Harv. L. Rev. 379, 418-419 (2011) (The standard critique of Lochner is usually placed into two separate categories: (1) It is error for a court to second-guess legislative judgments identifying a State interest based on the Court's own judgment reflecting its subjective moral or political preferences rather than using values authoritatively codified in the Constitution; and (2) A court should not second-guess legislative judgments and invalidate them on the basis of an "unenumerated" right.).

[50] In Lochner, the Court initially recognized the State's interest in protecting the health and safety of the public, but then the Court independently reviewed the State's justification for the legislation (although majority denied that it was simply substituting its judgment for that of the legislature). Lochner v. New York, 198 U.S. at 57 ("There is no reasonable ground for interfering with the liberty of person or the right of free contract....").

[51] See, e.g., Kimberly N. Brown, ''We the People," Constitutional Accountability, and Outsourcing Government, 88 Ind. L. J. 1347, n. 210, 1376 (2013) ("The [Supreme] Court has required that an asserted government interest serves the public good, rather than merely private interests or biases, in order to qualify as 'legitimate' under the rational basis test."), citing City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 446-47, 105 S.Ct. 3249, 67 L.Ed.2d 313 (1985) ("The State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational. . . Furthermore, some objectives-such as 'a bare ... desire to harm a politically unpopular group, . . . are not legitimate state interests.'"); U.S. Dep't of Agric. v. Moreno, 413 U.S. 528, 534, 93 S.Ct. 2821, 37 L.Ed. 782 (1973) ("The challenged classification clearly cannot be sustained by reference to this congressional purpose. For if the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot constitute a legitimate governmental interest.").

[52] Nollan v. Cal. Coastal Comm'n, 483 U.S. 825, 834, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987) ( In controversies involving land-use regulations and permits the High Court does not have a history of defining a legitimate state interest: "Our cases have not elaborated on the standards for determining what constitutes a 'legitimate state interest'....").

[53] See, e.g., Jacobs Ranch, L.L.C. v. Smith, 2006 OK 34, ¶ 26, 148 P.3d 842, 850 ("For the health, welfare and safety of its citizens, the Legislature may regulate a landowner's use and enjoyment of water resources to prevent waste and infringement on the rights of others.").

[54] Shepard v. Oklahoma Dept. of Corrections, 2015 OK 8, ¶ 18, 345 P.3d 377, 384.

[55] Indian Territory Illuminating Oil v. Davis, 1932 OK 210, 9 P.2d 40, 42 (discussed constitutional challenges to workers' compensation laws in other states and the constitutionality of Oklahoma's version "under the doctrine of general police power.").

[56] The Oklahoma penal code states workers' compensation fraud is punishable as a felony. 21 O.S. 2011 §§ 1, 2, 1663. Workers' compensation fraud is prohibited by the Administrative Workers' Compensation Act: "Any person or entity who makes any material false statement or representation, who willfully and knowingly omits or conceals any material information, or who employs any device, scheme, or artifice, or who aids and abets any person for the purpose of: (1) obtaining any benefit or payment, (2) increasing any claim for benefit or payment, or (3) obtaining workers' compensation coverage under this act, shall be guilty of a felony punishable pursuant to Section 1663 of Title 21 of the Oklahoma Statutes." 85A O.S.Supp. 2015 § 6 (A)(1).

[57] The Due Process Section of the Oklahoma Constitution also has an equal protection component. Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City, 1995 OK 62, 901 P.2d 800, n. 29, 805, cert. denied, 516 U.S. 1029, 116 S.Ct. 674, 133 L.Ed.2d 523 (1995) ("The same equal protection component found in the fourteenth amendment of the United States Constitution is present in the due process clause of art. 2, § 7.").

The Due Process Clause of the Fifth Amendment to the U. S. Constitution also includes an equal protection element. See, e.g., Johnson v. Robison, 415 U.S. 361, 364 n. 4, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974) ("Although the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is 'so unjustifiable as to be violative of due process.' . . . Thus, if a classification would be invalid under the Equal Protection Clause of the Fourteenth Amendment, it is also inconsistent with the due process requirement of the Fifth Amendment.") (citations omitted).

[58] 2003 OK 30, ¶ 12, 66 P.3d 442.

[59] See, e.g., Developments in the Law--The Interpretation of State Constitutional Rights, 95 Harv. L. Rev. 1324, 1473 (1982) ("Almost any substantive due process claim may be translated into an equal protection claim merely by pointing to some other group not subject to the challenged regulation. If a regulation does not serve a legitimate purpose -- and so violates substantive due process -- applying it to one group and not to another violates the equal protection requirement that a legitimate state purpose support a given classification.") (citations omitted).

[60] Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 466, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981), quoting New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976), (a legislature may make imperfect classifications which only partially ameliorate a perceived evil and defer complete elimination of the evil to future legislation); Erznoznik v. City of Jacksonville, 422 U.S. 205, 215, 95 S.Ct. 2268, 2275, 45 L.Ed.2d 125 (1975), citing Williamson v. Lee Optical Co., 348 U.S. 483, 488-489, 75 S.Ct. 461, 464-465, 99 L.Ed. 563 (1955) ("This Court frequently has upheld underinclusive classifications on the sound theory that a legislature may deal with one part of a problem without addressing all of it.").

[61] An underinclusive statute may demonstrate the absence of a compelling state interest required for a state's justification when restricting a fundamental right. See, e.g., Justice Kennedy's opinion for the Court in Church of Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) and its reliance, in part, upon Justice Scalia's opinion concurring in judgment in The Florida Star v. B. J. F., 491 U.S. 524, 540-541,109 S.Ct. 2603, 105 L.Ed.2d 443 (1989), for the concept that when a statute prohibits certain conduct, the articulated state interest given in justification of the prohibition is not a compelling state interest when the statute is underinclusive due to its failure to prohibit "other conduct producing substantial harm or alleged harm of the same sort." Church of Lukumi Babalu Aye, Inc., 508 U.S. at 547 (Part III of the opinion for the Court). See also Smith v. Daily Mail Publishing Co., 443 U.S. 97, 104-105, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979) (A statute was insufficiently tailored [underinclusive] in protecting anonymity of juveniles where it restricted only newspapers, not the electronic media or other forms of publication, from identifying juvenile defendants, and even assuming the statute served a state interest in furthering such anonymity, the statute's underinclusiveness failed to accomplish its purpose.).

[62] Vance v. Bradley, 440 U.S. 93, 97,108, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979).

[63] Board or Regents v. Updegraff, 1951 OK 270, 237 P.2d 131, reversed, Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed.2d 216 (1952).

[64] Board or Regents v. Updegraff, 237 P.2d at 137. The Court relied on this language in Gilbert Cent. Corp. v. State, 1986 OK 6, 716 P.2d 654, 659.

[65] Wieman v. Updegraff, 344 U.S. at 190, 191 (the Court concluded that "Indiscriminate classification of innocent with knowing activity must fall as an assertion of arbitrary power. The oath offends due process. . . We need not pause to consider whether an abstract right to public employment exists. It is sufficient to say that constitutional protection does extend to the public servant whose exclusion pursuant to a statute is patently arbitrary or discriminatory.") (material omitted).

[66] Englebrecht v. Day, 1949 OK 154, 208 P.2d 538.

[67] Adwon v. Retail Grocers Ass'n, 1951 OK 43, 228 P.2d 376, 378.

For a short note on legal challenges to Oklahoma's Unfair Sales Act, see So-Lo Oil Co., Inc. v. Total Petroleum, 1992 OK 71, n. 14, 832 P.2d 14, 17, commenting on Englebrecht v. Day, supra, Adwon, supra, Safeway Stores, Inc. v. Oklahoma Retail Grocers Ass'n, Okl., 1957 OK 336, 322 P.2d 179, aff'd 360 U.S. 334, 79 S.Ct. 1196, 3 L.Ed.2d 1280 (1959), and Glenn Smith Oil Co. v. Sheets, 1985 OK 56, 704 P.2d 474, 477.

[68] Davis Oil Co. v. Cloud, 1986 OK 73, 766 P.2d 1347.

[69] In Davis Oil Co., the majority opinion classified the Surface Damages Act (52 O.S.Supp.1982 §§ 318.2 through 318.9) as the removal of a common-law defense while the dissenting opinion viewed the Act as shifting a contractual property right from one contracting party to another when the Act was applied retroactively to a mineral lease that had been created prior to the effective date of the Act. Compare Davis Oil, 766 P.2d at 1350 ("The limitation on the operator's liability in the exercise of that right is to be viewed as no more than a defense which has been provided to the operator by operation of the common law in actions for damages by the surface estate holder") with 766 P.2d 1353-1357, at 1356 ("The implied covenant to reasonable use of the surface estate is thus "a part of the written lease as fully as if it had been expressly contained therein.") (Summers, J., dissenting opinion on rehearing, joined by Opala, V.C.J., Hodges, and Simms, JJ.).

[70] Davis Oil Co., 766 P.2d at 1351, quoting Anderson-Prichard Oil Corp. v. Corporation Commission, 1951 OK 234, 241 P.2d 363, appeal dismissed, 342 U.S. 938, 72 S.Ct. 562, 96 L.Ed. 698 (1952), and 766 P.2d at 1356, (Summers, J., dissenting), citing Anderson-Prichard Oil Corp. ("A state may in some cases exercise its police power and properly alter existing contractual obligations.").

[71] 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996).

[72] 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003).

[73] BMW of North America v. Gore, 517 U.S. at 568 (Court held that the Constitution imposed limits on procedures for awarding punitive damages and also explained that "Only when an award can fairly be categorized as 'grossly excessive' in relation to these interests does it enter the zone of arbitrariness that violates the Due Process Clause of the Fourteenth Amendment."); State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. at 417 ("To the extent an award is grossly excessive, it furthers no legitimate purpose and constitutes an arbitrary deprivation of property. . . [and] they have a devastating potential for harm.")

[74] BMW of North America v. Gore, 517 U.S. at 568 (citing rule and explaining that a State's legitimate intersts do not include a grossly excessive damages which are arbitrary).

[75] BMW, supra, and State Farm Mut. Auto. Ins. Co., supra. See also Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960) ("...when we deal with a withholding of a noncontractual benefit under a social welfare program . . . Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification.").

[76] Jimenez v. Weinberger, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974).

[77] Jimenez, 417 U.S. at 635.

[78] Jimenz, 417 U.S. at 636.

[79] Jimenz, 417 U.S. at 636, material omitted and explanatory phrase added.

[80] Jimenz, 417 U.S. at 636.

[81] Mathews v. Lucas, 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976) quoting Jimenez v. Weinberger, 417 U.S. 628, 636, 637.

[82] See, e.g., Murillo v. Bambrick, 681 F.2d 898, n. 15, 905 (3rd Cir. 1982) cert. denied, 459 U.S. 1017, 103 S.Ct. 378, 74 L.Ed.2d 511 (1982), (court observed that "judicial review under the rational relation standard has never been entirely 'toothless.'"), citing Jimenez v. Weinberger, supra, and two additional Supreme Court opinions); Williams v. St. Clair, 610 F.2d 1244, 1249 (5th Cir. 1980) (reaffirming basic principles of rational basis review from Dandridge v. Williams, 397 U.S. 471 (1970), and noting Jimenez v. Weinberger, supra, for the concept that there was no rational basis for the classification scheme); Berger v. City of Mayfield Heights, 154 F.3d 621, 625 (6th Cir. 1998), (observing that while rational basis is "the least demanding test used by courts," it is not "toothless"), citing Mathews v. Lucas, 427 U.S. 495, 510 (1976), and its reference to Jimenez v. Weinberger, supra); Kitchen v. Herbert, 755 F.3d 1193, 1221(10th Cir. 2014), citing Jimenez v. Weinberger, supra, as an example of an underinclusive statute which conclusively excluded a subclass of individuals who were, in fact, otherwise statutorily qualified to be in the class of recipients for the statutory benefit); Martin v. Bergland 639 F.2d 647, 650 (10th Cir. 1981) (citing Jimenez for the proposition "some plaintiffs have succeeded under the rational basis test in overcoming the presumption of validity generally accorded government action.").

[83] Jimenez v. Weinberger, 417 U.S. at 637.

[84] See, e.g., 85A O.S.Supp. 2013 § 35 (A)(1): "Every employer shall secure compensation as provided under this act to its employees for compensable injuries without regard to fault."

[85] 406 U. S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972).

[86] Weber, 406 U.S. at 175.

[87] Employer's argument is that a legislative body may constitutionally prohibit one class of people from exercising a right (injured workers filing nonfraudulent claims) because another group of people abuse that right (workers filing fraudulent claims). Workers' compensation fraud is punishable as a criminal felony in Oklahoma. 21 O.S.2011 § 1663. The issue of if, or when, a legislative body may constitutionally stop one group of people from exercising a right granted or recognized by law and prohibiting their innocent conduct because another group of people engage in criminal activity is an issue which arises frequently in various political debates involving issues beyond the scope of workers' compensation jurisprudence. We need not decide the issue today.

[88] In District Court common-law actions fraud is "never presumed, but must be affirmatively alleged and proven by the party who relies on it, and cannot be inferred from facts which may be consistent with honesty of purpose." Albert & Harlow, Inc. v. Fitzgerald, 1964 OK 42, 389 P.2d 994, 996, citing Stafford v. McDougal, 1935 OK 251, 42 P.2d 520. In District Court, the issue of fraud is generally a question of fact that must be proved, even when it is inferred from facts and circumstances. Croslin v. Enerlex, Inc., 2013 OK 34, ¶ 12, 308 P.3d 1041, 1046, citing 15 O.S.2011 § 60; Bloch v. Morgan, 1926 OK 163, 244 P. 176; and Singleton v. LePak, 1967 OK 37, ¶ 13, 425 P.2d 974, 978. Prohibiting an employee from filing a District Court action against an employer has no relationship to preventing that person from filing a fraudulent claim before the Workers' Compensation Commission, an administrative agency.

[89] Jay M. Feinman, The Jurisprudence of Classification, 41 Stan. L. Rev. 661, 664 (1980).

[90] We construe the reliance upon § 5 by respondent and amicus curiae as an effort to show the rationality of § 2(14). While we conclude an unconstitutional application of § 2 (14) occurred, we make no conclusion or holding on the constitutionality of § 5 due to our disposition of this appeal. See opinion part VI. The Grand Bargain, herein.

[91] See the discussion of the grand bargain in note 6, supra, and its accompanying text.

[92] Matthew J. Kane, The Need for Reform in Our Employers Liability Laws, 20 Yale L.J. 353, 356 (1911).

[93] Parret v. UNICCO Service Co., 2005 OK 54, ¶ 19, 127 P.3d 572, 577-578 quoting Corbin v. Wilkinson, 1935 OK 977, 52 P.2d 45, 48 ("Workers' compensation was designed to avoid destitution. It 'was passed for the special benefit of injured work[ers]. The Legislature intended the benefits of the act shall flow to the injured work [ers] and their dependents, in order to afford them a living and prevent them from becoming public charges.'").

[94] See, e.g., State ex rel. Wright v. Oklahoma Corp. Com'n, 2007 OK 73, ¶ 28 & n. 17, 170 P.3d 1024, 1034 (stating principle and collecting some of our cases from 2007, 1997, 1937, 1935, and a 1912 opinion from the Court of Criminal Appeals).

[95] St. Paul Fire & Marine Ins. Co. v. Getty Oil Co., 1989 OK 139, 782 P.2d 915, 919.

[96] This was recognized early in the history of our State, by R. L. 1910, § 4642 (12 O.S.2011 § 2):

The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma, but the rule of the common law, that statutes in derogation thereof, shall be strictly construed, shall not be applicable to any general statute of Oklahoma; but all such statutes shall be liberally construed to promote their object.

[97] For example, we need not address whether Okla. Const. Art. 2 § 7 protects unenumerated rights derived from the nature of liberty, or the proper analysis for determining the nature of State constitutional rights, or the nature and scope of a party's burden to create a factual record sufficient to support such an inquiry, or any other legal issue involved with such inquiry. But see, generally, Joshua D. Hawley, The Intellectual Origins of (Modern) Substantive Due Process, 93 Tex. L. Rev. 275, 280 -281 (2014) (arguing that modern substantive due process should be conceptualized as a doctrine of unenumerated rights derived from the nature of liberty), and compare Draper v. State, 1980 OK 117, 621 P.2d 1142, 1145 ("The Constitution, the bulwark to which all statutes must yield, must be construed with reference to the fundamental principals which support it. Effect must be given to the intent of its framers and of the people adopting it.").

[98] Okla. Const. Art. 2 § 6: The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice.

[99] Guardianship of Berry, 2014 OK 56, n. 43, 335 P.3d 779, 800 (the Court does not issue advisory opinions or answer hypothetical questions); Baby F. v. Oklahoma County Dist Ct., 2015 OK 24, ¶ 11, 348 P.3d 1080, 1084 (A hypothetical issue includes circumstances where adjudication of that issue will fail to grant effective legal relief).

[100] A workers' compensation proceeding is a statutory public-law proceeding (not a private dispute) and when resolving a public-law question therein the Court may sua sponte choose the dispositive public-law theory. Yeatman v. Northern Oklahoma Resopurce Ceneter of Enid, 2004 OK 27, nn. 28, 29, ¶ 15, 89 P.3d 1095, 1101. However, a public-law theory may not be used by the Court when the record on appeal is insufficient to support that theory. Lincoln Farm, L.L.C. v. Oppliger, 2013 OK 85, n. 19, 315 P.3d 971, 977.

[101] See note 18, supra, and the discussion explaining a party who challenges the constitutionality of a statute must have a legally cognizable interest which is threatened by application of that statute.

[102] Non-Hohfeldian standing is when plaintiff sues to secure judicial relief that would benefit a public entity or the community as a whole, but Hohfeldian standing is when a plaintiff seeks to adjudicate his or her claimed right, privilege, immunity, or power with respect to another party. State ex rel. Oklahoma Bar Ass'n v. Mothershed, 2011 OK 84, n. 135, 264 P.3d 1197, 1228; State ex rel. Macy v. Bd. of County Comr's of Oklahoma County, 1999 OK 53, n. 28, 986 P.2d at 1138.

 

 

COLBERT, J., concurring specially with whom WATT, J., joins.

¶1 I concur in the majority's result that the arbitrary 180-day limitation on cumulative trauma injuries is unconstitutional, but write separately to explain how the provision also violates Article 2, Section 6 of the Oklahoma Constitution.

¶2 The Oklahoma Constitution guarantees that all courts "shall be open to every person, and a speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice." Okla. Const. art. 2, § 6. The constitutional provision embodies three distinct constitutional guarantees: (1) access to the courts; (2) right-to-a-remedy for every wrong and every injury to person, property, or reputation; and (3) prohibition on the sale or denial of justice.

¶3 The majority and the Attorney General emphasize the Legislature's police power and the Legislature's right in crafting a workers' compensation scheme. In intimating that the Legislature enjoys unfettered discretion in abolishing a claimant's right or benefit, the majority postulates that such authority is only curtailed (1) when the Legislature creates an unconstitutional condition related to that right or benefit, (2) by the expressed Will of the People in the Oklahoma Constitution provisions prohibiting unreasonable and arbitrary legislation, and (3) other Oklahoma constitutional provisions addressing private rights and due process. See Op. at ¶ 26 & fns. 42-44. However, the majority's analysis is incomplete. The Legislature's police power is not absolute. In crafting a substitute remedy, the Legislature's police power is also limited by Article 2, Section 6 of the Oklahoma Constitution. When the Legislature taketh away all of an employee's work-related common law actions in tort and places such actions in the exclusive purview of the Administrative Act, that police power must also be curtailed by the industrial bargain's delicate balance.

¶4 I must again emphasize that the foundation of the Oklahoma workers' compensation scheme is the "Industrial Bargain" also known as the "Grand Bargain." Yet, I am constrained to repeat ad nauseam the underlying policies and purposes behind it. That system, as explained in Parret v. Unicco Serv. Co., provides an expeditious, inexpensive means to compensate workers for injuries, disabilities, and deaths sustained in the course of their employment, without a determination of fault. See 2005 OK 54, 127 P.3d 572. The employee is afforded swift and certain payment of benefits sufficient to cure or relieve the effects of the injury, while giving up a myriad of potential damages available to him in tort. The employer, on the other hand, assumes liability for an employee's injury or death, but benefits from the limited liability fixed to loss wages, medical, and vocational rehabilitation occasioned by the work-related injury or death. Clearly, the linchpin of this legislatively created bargain is that the employer assumes liability for work-related injuries and death; while the employee gives up any common law action sounding in tort. In essence, the system strikes a balance between the rights and duties of Oklahoma employers and employees. But with the enactment of the Administrative Workers' Compensation Act (AWCA), the balance is now off kilter and has become one-sided to the benefit of the employer.

¶5 Following the enactment of the AWCA, this Court has begun to see an influx of constitutional challenges to the Act. Although each case presents a unique set of issues, a common theme exists-the systematic erosion of the Industrial or Grand Bargain. This Court, fully aware of the rapid demise of the Grand Bargain, assured Oklahoma workers that we would address the Act's constitutionality, provision by provision, "as a case or controversy or a justiciable issue is presented to this Court." Coates v. Fallin, 2013 OK 108, ¶ 3, 316 P.3d 924. We are forced by our jurisprudence to insure that claimants and employers in the workers' compensation system have their day in court and receive a fair shake.

¶6 Simply put, the Administrative Act abrogates an injured employee's bargained remedies, and at times, leaves the employee bereft of any legally cognizable recourse.

 

 

COMBS, V.C.J., concurring specially, with whom WATT, J., joins:

¶1 While I agree with the majority that the 180-day limitation provision in 85A O.S. Supp. 2013 § 2(14) is unconstitutional as applied to Petitioner on substantive due process grounds, I write separately to emphasize that it also amounts to a denial of equal protection under the law to Petitioner and those similarly situated, in violation of Okla. Const., art. 2, §§ 6 & 7.[1]

¶2 In Dean v. Multiple Injury Trust Fund, 2006 OK 78, ¶19-22, 145 P.3d 1097, this Court considered whether special treatment of the Multiple Injury Trust fund as compared to other workers' compensation insurers violated, amongst other provisions, Okla. Const., art. 2, §§ 6 & 7. This Court explained:

[i]n testing the validity of a state statute that differentiates in its treatment of one group of individuals over other groups, a common test is applied when considering due process of law, equal protection of the laws, and special as distinguished from general laws: that is whether the classification forming the basis for the differentiation is arbitrary or capricious, and whether it bears a reasonable relation to the object to be considered.

Dean, 2006 OK 78, ¶19.

In that cause, because of its unique status and continuing problem with timely payment of awards due to lack of funds, this Court determined treating the Multiple Injury Trust Fund different from other workers compensation insurers satisfied the above-quoted standard. Dean, 2006 OK 78, ¶22. 

¶3 In Gladstone v. Bartlesville Indep. School Dist. No. 30 (I-30), 2003 OK 30, 66 P.3d 442, this Court upheld a classification built into the Governmental Tort Claims Act (GTCA) that immunized the state and political subdivisions from liability for on-the-job injuries covered by worker's compensation. Describing the challenged provision, the Court stated: "[i]n short, while the state and political subdivisions are not liable for injuries to tort claimants who stand covered by the workers' compensation regime, they are legally accountable for the injuries to tort claimants not otherwise protected." Gladstone, 2003 OK 30, ¶13. Describing the appellant's argument, this Court noted:

[t]he hardship Gladstone complains of is the arguable unfairness in treating governmental tort claimants who are covered by workers' compensation differently from persons without that coverage. The latter class not only may sue in tort to recover damages for the negligent acts of governmental tortfeasors but is also accorded access to collateral indemnity sources without losing the right to press a public tort claim. The critical question here is whether the classification in question rests upon a difference which bears a reasonable relationship to the goals of the GTCA.

Gladstone, 2003 OK 30, ¶14.

In Gladstone, this court determined that excluding liability under the GTCA for injuries covered by workers' compensation was rationally related to the legitimate state interest of protecting the public fisc by eliminating public liability for injuries where a collateral source of indemnity was available. 2003 OK 30, ¶18. The Court concluded: "[w]e cannot say that the challenged classification so lacks rationality as to amount to a denial of equal protection." Gladstone, 2003 OK 30, ¶18.

¶4 The classification in the present cause, however, goes considerably further than the one this court analyzed in Gladstone. Title 85A O.S. Supp. 2013 § 2(14) provides:

"Cumulative trauma" means an injury to an employee that is caused by the combined effect of repetitive physical activities extending over a period of time in the course and scope of employment. Cumulative trauma shall not mean fatigue, soreness or general aches and pain that may have been caused, aggravated, exacerbated or accelerated by the employee's course and scope of employment. Cumulative trauma shall have resulted directly and independently of all other causes and the employee shall have completed at least one hundred eighty (180) days of continuous active employment with the employer;

Section 2(14) defines "cumulative trauma" in a particular manner: as an injury to an employee that is caused by the combined effect of repetitive physical activities extending over a period of time in the course and scope of employment. It then, however, adds an arbitrary minimum employment period of 180 days. Two claimants may both have injuries caused by the combined effect of repetitive physical activities extending over a period of time in the course and scope of employment, but if one has 179 days of continuous active employment with the employer and the other has 180 days, the former does not have cumulative trauma.

¶5 Unlike in Gladstone, where the classification operated to bar public tort liability for individuals who had a collateral source of recovery, the exclusive remedy provision of the Administrative Workers' Compensation Act (AWCA), 85A O.S. Supp. 2013 § 5 and the 180-day cutoff in 85A O.S. Supp. 2013 § 2(14) create a classification that completely bars Petitioner and others in Petitioner's position from recovering for their injuries at all. In this regard, the 180-day line separating who may recover for potentially identical injuries on cumulative trauma grounds is not only arbitrary, but fundamentally unjust.

¶6 Under the provisions of the AWCA, specifically 85A O.S. Supp. 2013 §2(14) and §5, an entire class of injured employees that includes the Petitioner in this cause are left with no remedy at all. They are barred from recovering for cumulative trauma by 85A O.S. Supp. 2013 §2(14)'s imposition of an arbitrary 180-day cutoff that has no reasonable relation to the goals of the AWCA and they are barred from pursuing any tort claim by the exclusive remedy provision, 85A O.S. Supp. 2013 § 5. This complete bar to recovery implicates the equal protection aspect of Okla. Const., art. 2, § 6 because a subset of injured workers is being denied all access to the courts to attain a remedy available to other injured workers, but denied to them. Barring both a common law tort claim and a workers' compensation claim, leaving claimants in Petitioner's position without any way to recover for their injury, is not reasonably related to the State's interest in preventing workers' compensation fraud.

¶7 To facilitate workers' compensation and its objectives, what has often been called the grand (or industrial) bargain was struck: the employee gave up the right to bring a common law negligence action against the employer and in return received automatic guaranteed benefits. The employer gave up the common law defenses and received reduced exposure to liability. See Parret v. UNICCO Service Co., 2005 OK 54, ¶20, 127 P.3d 572. The grand bargain is not merely the starting point for an analysis to inform the court of what may or may not be legitimate state interests, but the cornerstone of the entire workers' compensation system's legitimacy. By cutting off all recovery for an injured worker, excluding them from both workers' compensation coverage and from filing a tort claim, the Legislature has violated the grand bargain and betrayed the fundamental principles of justice that gave rise to it in the first place.

¶8 I do not dispute that the State has a legitimate interest in preventing workers' compensation fraud. I also agree with the majority's substantive due process analysis. However, I feel it necessary to further emphasize the injustice that has occurred here. The complete roadblock to any recovery for Petitioner's injury is impermissibly arbitrary and not reasonably related to the purposes of the AWCA.

FOOTNOTES

[1] As the majority correctly points out, many claims alleging violations of substantive due process also support an equal protection claim, because Okla. Const., art. 2, § 7 has an equal protection component. Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City, 1995 OK 62, ¶12, 901 P.2d 800, cert. denied, 516 U.S. 1029, 116 S.Ct. 674, 133 L.Ed.2d 523 (1995). Okla. Const., art. 2, §§ 6, also contains an equal protection component. See Thayer v. Phillips Petroleum Co., 1980 OK 95, ¶¶12-15, 613 P.2d 1041 ("The courts must be open to all on the same terms without prejudice.").






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1986 OK CIV APP 16, 751 P.2d 203, 57 OBJ 1961, Amoco Production Co. v. Corporation Com'n of State of Okl.
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1986 OK 34, 725 P.2d 278, 57 OBJ 1485, Seal v. Corporation Com'n
Cited
 1986 OK 51, 733 P.2d 375, 57 OBJ 1904, Turner v. City of Lawton
Discussed
 1986 OK 73, 766 P.2d 1347, 57 OBJ 2885, Davis Oil Co. v. Cloud
Discussed
 1987 OK 114, 746 P.2d 1135, 58 OBJ 3282, Fair School Finance Council of Oklahoma, Inc. v. State
Discussed
 1988 OK 52, 756 P.2d 588, 59 OBJ 1212, Federal Land Bank of Wichita v. Story
Discussed
 1989 OK 18, 768 P.2d 901, 60 OBJ 325, Northeast Oklahoma Elec. Co-op., Inc. v. State ex rel. Corp. Com'n
Discussed
 1989 OK 139, 782 P.2d 915, 60 OBJ 2835, St. Paul Fire & Marine Ins. Co. v. Getty Oil Co.
Discussed at Length
 1940 OK 215, 102 P.2d 938, 187 Okla. 593, KEATON v. OKLAHOMA CITY
Discussed
 1992 OK 71, 832 P.2d 14, 63 OBJ 1622, So-Lo Oil Co., Inc. v. Total Petroleum, Inc.
Discussed
 1992 OK 122, 838 P.2d 1, 63 OBJ 2386, Initiative Petition No. 349, State Question No. 642, In re
Discussed at Length
 1938 OK 162, 77 P.2d 101, 182 Okla. 215, In re ABRAMS' WILL
Discussed
 1994 OK 150, 891 P.2d 1219, 65 OBJ 4201, Williams Natural Gas Co. v. State Bd. of Equalization
Discussed
 1946 OK 211, 171 P.2d 618, 197 Okla. 331, VFW v. CHILDERS
Discussed
 1935 OK 251, 42 P.2d 520, 171 Okla. 106, STAFFORD v. MCDOUGAL
Discussed
 1917 OK 47, 162 P. 938, 63 Okla. 52, ADAMS v. ITEN BISCUIT CO.
Discussed
 1935 OK 977, 52 P.2d 45, 175 Okla. 247, CORBIN v. WILKINSON
Discussed
 1932 OK 210, 9 P.2d 40, 156 Okla. 1, INDIAN TERR. ILLUMINATING OIL CO. v. DAVIS
Discussed
 1957 OK 336, 322 P.2d 179, SAFEWAY STORES v. OKLAHOMA RETAIL GROCERS ASS'N
Discussed
 1933 OK 546, 29 P.2d 24, 167 Okla. 209, STATE ex rel. ROTH v. WATERFIELD
Discussed
 1964 OK 42, 389 P.2d 994, ALBERT & HARLOW, INC. v. FITZGERALD
Discussed
 1966 OK 9, 412 P.2d 142, STATE v. PARHAM
Discussed
 1967 OK 37, 425 P.2d 974, SINGLETON v. LePAK
Discussed
 1995 OK 28, 894 P.2d 1074, 66 OBJ 1107, Herring v. State ex rel. Oklahoma Tax Comm.
Discussed
 1968 OK 54, 440 P.2d 744, STATE ex rel. BLANKENSHIP v. FREEMAN
Discussed
 1995 OK 62, 901 P.2d 800, 66 OBJ 2037, Oklahoma Assn. for Equitable Taxation v. City of Oklahoma City
Discussed at Length
 2002 OK 94, 61 P.3d 219, WASTE CONNECTIONS, INC. v. OKLAHOMA DEPARTMENT OF ENVIRONMENTAL QUALITY
Discussed
 2003 OK 30, 66 P.3d 442, GLADSTONE v. BARTLESVILLE INDEPENDENT SCHOOL DISTRICT NO. 30
Discussed at Length
 2004 OK 23, 91 P.3d 605, EDMONDSON v. PEARCE
Discussed
 2004 OK 27, 89 P.3d 1095, YEATMAN v. NORTHERN OKLAHOMA RESOURCE CENTER OF ENID
Discussed
 2005 OK 27, 130 P.3d 213, YOCUM v. GREENBRIAR NURSING HOME
Discussed at Length
 1930 OK 108, 285 P. 1040, 142 Okla. 146, GIBBONS v. MISSOURI K. & T. R. CO.
Discussed
 2005 OK 54, 127 P.3d 572, PARRET v. UNICCO SERVICE COMPANY
Discussed at Length
 2006 OK 34, 148 P.3d 842, JACOBS RANCH, L.L.C. v. SMITH
Discussed at Length
 2006 OK 78, 145 P.3d 1097, DEAN v. MULTIPLE INJURY TRUST FUND
Discussed at Length
 2006 OK 99, 152 P.3d 875, STATE ex rel. OKLA. STATE DEPT. OF HEALTH v. ROBERTSON
Discussed
 2007 OK 60, 163 P.3d 557, CONAGHAN v. RIVERFIELD COUNTRY DAY SCHOOL
Discussed
 2007 OK 73, 170 P.3d 1024, STATE ex rel. WRIGHT v. OKLAHOMA CORPORATION COMMISSION
Discussed at Length
 2008 OK 15, 180 P.3d 1205, MULTIPLE INJURY TRUST FUND v. WADE
Discussed
 2008 OK 36, 184 P.3d 546, MOVANTS TO QUASH MULTICOUNTY GRAND JURY SUBPOENA v. DIXON
Discussed
 2010 OK 3, 230 P.3d 853, ROGERS v. QUIKTRIP CORP.
Discussed
 2011 OK 53, 260 P.3d 1251, THOMAS v. HENRY
Discussed
 2011 OK 57, 270 P.3d 113, TULSA INDUSTRIAL AUTHORITY v. CITY OF TULSA
Discussed
 2011 OK 84, 264 P.3d 1197, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MOTHERSHED
Discussed at Length
 2012 OK 103, 292 P.3d 28, NOVA HEALTH SYSTEMS v. PRUITT
Discussed
 1975 OK 25, 532 P.2d 426, MARYLAND CASUALTY COMPANY v. HANKINS
Discussed
 2013 OK 34, 308 P.3d 1041, CROSLIN v. ENERLEX, INC.
Discussed
 2013 OK 85, 315 P.3d 971, LINCOLN FARM, L. L. C. v. OPPLIGER
Discussed
 2013 OK 108, 316 P.3d 924, COATES v. FALLIN
Discussed
 2014 OK 8, 319 P.3d 674, GENTGES v. OKLAHOMA STATE ELECTION BOARD
Discussed
 2014 OK 23, 326 P.3d 496, IN RE: INITIATIVE PETITION NO. 397, STATE QUESTION NO. 767
Discussed
 2014 OK 31, 339 P.3d 848, CDR SYSTEMS CORPORATION v. OKLAHOMA TAX COMMISSION
Discussed at Length
 2014 OK 56, 335 P.3d 779, IN THE MATTER OF THE GUARDIANSHIP OF BERRY
Discussed
 2015 OK 8, 345 P.3d 377, SHEPARD v. OKLAHOMA DEPARTMENT OF CORRECTIONS
Discussed
 2015 OK 18, 352 P.3d 1196, IN RE: DETACHMENT OF MUNICIPAL TERRITORY FROM THE CITY OF ADA
Discussed
 2015 OK 24, 348 P.3d 1080, BABY F. v. OKLAHOMA COUNTY DISTRICT COURT
Discussed
 2015 OK 26, 348 P.3d 1089, IN THE MATTER OF T.H.
Discussed
 1977 OK 204, 571 P.2d 1207, SUNTIDE, ETC. v. STATE EX REL. OKL., ETC.
Discussed
 1980 OK 95, 613 P.2d 1041, Thayer v. Phillips Petroleum Co.
Discussed
 1980 OK 96, 614 P.2d 45, State ex rel. Howard v. Oklahoma Corp. Commission
Discussed
 1980 OK 117, 621 P.2d 1142, Draper v. State
Discussed
 1979 OK 118, 599 P.2d 406, RED SLIPPER CLUB v. CITY OF OKLAHOMA CITY
Discussed
 1980 OK 180, 621 P.2d 1148, Earnest, Inc. v. LeGrand
Discussed
 1926 OK 163, 244 P. 176, 116 Okla. 199, BLOCH v. MORGAN
Discussed
 1951 OK 43, 228 P.2d 376, 204 Okla. 199, ADWON v. OKLAHOMA RETAIL GROCERS ASS'N
Discussed
 1951 OK 224, 236 P.2d 970, 205 Okla. 255, OKLAHOMA NATURAL GAS CO. v. CHOCTAW GAS CO.
Discussed
 1951 OK 234, 241 P.2d 363, 205 Okla. 672, ANDERSON-PRICHARD OIL CORP. v. CORPORATION COMM'N
Discussed
 1951 OK 270, 237 P.2d 131, 205 Okla. 301, BOARD OF REGENTS OF OKLAHOMA AGRIC. COLLEGES v. UPDEGRAFF
Discussed
 1951 OK 310, 237 P.2d 903, 205 Okla. 311, In re FLYNN'S ESTATE
Discussed
 1949 OK 154, 208 P.2d 538, 201 Okla. 585, ENGLEBRECHT v. DAY
Discussed
 1999 OK 45, 981 P.2d 309, 70 OBJ 1669, Presley v. Board of County Commissioners
Discussed
 1999 OK 53, 986 P.2d 1130, 70 OBJ 1820, State ex rel. Macy v. Board of County Commissioners
Cited
 1999 OK 64, 984 P.2d 200, 70 OBJ 2100, Fent v. Oklahoma Capitol Improvement Authority
Discussed at Length
 1943 OK 28, 135 P.2d 332, 192 Okla. 251, JACK LINCOLN SHOPS v. STATE DRY CLEANERS' BD.
Discussed
 1983 OK 99, 672 P.2d 299, Tulsa Indus. Authority v. State
Discussed
 1984 OK 66, 698 P.2d 915, T.I.M. Co., Inc. v. Oklahoma Land Title Ass'n
Discussed
 1985 OK 41, 701 P.2d 412, Mid-Continent Life Ins. Co. v. City of Oklahoma City
Discussed
 1985 OK 56, 704 P.2d 474, Glenn Smith Oil Co. v. Sheets
Discussed
 1985 OK 61, 704 P.2d 479, McConnell v. Town Clerk of Tipton
Discussed
 1986 OK 6, 716 P.2d 654, 57 OBJ 788, Gilbert Cent. Corp. v. State
Discussed
 1986 OK 30, 720 P.2d 721, 57 OBJ 1415, Chamberlin v. Chamberlin
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2, Common Law to Remain in Force in Aid of General Statutes
Cited
 12 O.S. 1651, Determination of Rights, Status or Other Legal Relations - Exceptions
Cited
Title 15. Contracts
 Cite
Name
Level

 15 O.S. 60, Actual Fraud
Cited
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 1, Short Title
Cited
 21 O.S. 1663, Workers' Compensation Fraud - Penalty - Definitions
Cited
Title 52. Oil and Gas
 Cite
Name
Level

 52 O.S. 318.2, Definitions
Cited
Title 62. Public Finance
 Cite
Name
Level

 62 O.S. 493, Unconstitutional
Cited
Title 85A. Workers' Compensation
 Cite
Name
Level

 85A O.S. 2, Definitions
Discussed at Length
 85A O.S. 5, Exclusivity
Discussed at Length
 85A O.S. 6, False Statements and Misrepresentation - Criminal Penalties - Enforcement - Workers' Compensation Fraud Investigation Unit - Rules
Cited
 85A O.S. 35, Employer - Duty to Compensate - Limitation - Primary Obligation
Cited